[S. F. No. 6437. Department One.—September 5, 1913.]

In the Matter of the Estate of ELIZABETH STRACHAN, Deceased. JULIA T. CAREY, Contestant and Respondent, v. CLARA WADSWORTH, Proponent and Appellant.

WILL—MENTAL INCOMPETENCY—UNDUE INFLUENCE—EVIDENCE.—On an appeal from an order refusing to admit a will to probate, based upon a verdict of a jury that at the time of the execution of the will the testatrix was of unsound mind and was acting under undue influence, it is held, that the evidence was sufficient to justify the verdict in each particular.

ID.—CONTEST—EVIDENCE—INFIRM MENTAL STATE—IMMATERIAL ERROR. On a contest of a will on the ground of the mental incompetence of the testatrix, the admission of testimony of the contestant that at a time about three years prior to the execution of the will the testatrix was in "an infirm mental state," even if erroneous, will be

deemed without prejudice, if similar evidence had been admitted without objection, and it appears that at about the time referred to the testatrix had been judicially declared an incompetent.

Id.—Admission of Certificate of Proof of Prior Will—Instructions Limiting Effect of Evidence.—The admission in evidence in such contest of the certificate of proof of will attached to a prior will of the testatrix that had been previously probated, was without prejudice, if the court, at the time the evidence was admitted, immediately charged the jury that the declaration in the certificate that the prior will was the last will of the decedent was not binding in the contest on trial, and in its charge at the conclusion of the testimony, expressly instructed that the probate of the prior will in no way affected the validity of the latter, and that in admitting the former the court was not passing upon the validity of the latter, which was not then before it.

Id.—Conspiracy to Procure Will by Undue Influence—Declarations Prior to Execution of Will.—Where it was the theory of the contestant that two persons had joined in a conspiracy to procure, by undue influence, the execution of the will in question, and preliminary evidence in support of such theory had been offered, the declarations of either party to the conspiracy, made prior to the execution of the will, could properly be shown in evidence on the trial of the contest in support of the allegation of undue influence.

Id.—Declarations After Execution of Will—Immaterial Error.— The admission of the declarations of one of the conspirators, made after the execution of the will, even if erroneous, is held not of sufficient importance to warrant a reversal.

Id.—Verdict Finding Unsoundness of Mind and Undue Influence— Error Affecting Only One Ground of Contest.—Where the verdict of the jury found against the validity of the will on both of the issues of unsoundness of mind and undue influence, and no material error affected the verdict so far as concerned the issue of unsoundness of mind, any error bearing upon the question of undue influence only does not warrant a reversal of the order refusing to probate the will.

APPEAL from an order of the Superior Court of Marin County refusing a new trial. Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

Coogan & O'Connor, and Powell & Schwartz, for Appellant.

Martinelli & Greer, and Joseph K. Hawkins, for Respondent.

SLOSS, J.—On November 3, 1910, Clara Wadsworth filed in the superior court of Marin County a paper purporting to be the last will of Elizabeth Strachan, deceased, together with a petition that it be admitted to probate. The paper bore date the twelfth day of November, 1908, and gave the entire estate to Mrs. Wadsworth, who was named as executrix. Mrs. Julia T. Carey, who was the sole beneficiary and the executrix named in a similar document dated the eighth day of November, 1908, which had already been admitted to probate in said superior court, filed a contest, attacking the paper of November 12th on the ground of unsoundness of mind on the part of the decedent, as well as undue influence alleged to have been exerted by Mrs. Wadsworth and her mother, Mrs. Reeves Atkinson. Issues were joined and the contest was tried before a jury, which returned a special verdict in answer to questions as follows:

"1. Was Elizabeth Strachan of sound and disposing mind at the time of the execution of the alleged will on November 12th 1908?

"Answer: No.

"2. Was the alleged will dated November 12th, 1908, made by Elizabeth Strachan while acting under the undue influence of Mrs. Reeves Atkinson and Clara M. Wadsworth, or either of them?

"Answer: Yes."

Upon this verdict judgment was entered denying the application for probate. The proponent appeals from an order denying her motion for a new trial.

It is claimed that the evidence was insufficient to justify the verdict upon either unsoundness of mind or undue influence. With this contention we cannot agree. There is no occasion to review in detail the evidence which tended to support the contestant's position on these issues. Summarized very briefly, it is to the effect that in 1897 or 1898 Mrs. Strachan, who had been, for a time, employed in domestic service in the family of which the contestant was a member, and thereafter in the same capacity elsewhere, becoming too old to engage longer in such work, retired and took up her abode at San Rafael. She lived there until November, 1905, when, by order of the superior court of Marin County, she was declared incompetent, and the contestant, Mrs. Carey,

was appointed guardian of her person and estate. The guardian placed her for a few days in the King's Daughters' Home at San Francisco, and then put her in charge of Mrs. Reeves Atkinson, who was conducting at San Francisco a sanatorium for the mentally deranged. A monthly payment was made to Mrs. Atkinson by Mrs. Carey out of the funds of her ward. Following the earthquake and fire of April, 1906, Mrs. Atkinson removed her sanatorium to Fruitvale, Alameda County, and took Mrs Strachan there, continuing to care for her on the same terms as theretofore. Mrs. Strachan had made several wills leaving a part or all of her property to Mrs. Carey. One of these was executed while she was under guardianship. Mrs. Atkinson expressed to Mrs. Carey a doubt regarding the validity of a will made by one who had been declared incompetent. Thereupon proceedings were taken to have Mrs. Strachan restored to competency. The matter was brought up in the superior court of Marin County, and, upon the evidence then offered, Mrs. Strachan herself not being examined, an order declaring her restoration to competency was made. Shortly thereafter, the will of November 8, 1908, making Mrs. Carey the sole beneficiary, was executed. Four days later, on November 12, 1908, the will under contest, giving all of the estate to Mrs. Wadsworth, the daughter of Mrs. Atkinson, was made. Mrs. Carey, acting under a power of attorney, continued to manage Mrs. Strachan's property until her death, in May, 1910. There was testimony that, prior to and at the time Mrs. Strachan was declared incompetent, she was very feeble, physically, and "mentally very incompetent," and that when she was restored to competency, and until she died, her mental condition was the same. There was also testimony to the effect that she was addicted to drink, and that she was "childish," and "would do what everybody would tell her . . . particularly what Mrs. Wadsworth and Mrs. Reeves would ask her to do." The evidence which we have thus outlined was ample, if accepted by the jury, to warrant the finding that the decedent was not of sound mind at the date of the alleged will. The judicial declaration of incompetency was, if not conclusive, certainly very satisfactory evidence that, at the date of that declaration, Mrs. Strachan did not possess a sound and disposing mind. The somewhat peculiar

conditions surrounding the order of restoration, followed, as it was, by no change in her place or mode of living, or in the control of her property, lend confirmation to the testimony that her mental condition had not improved in the interval. The fact that, after making a series of wills, all providing liberally for the contestant, and within four days after the last of them, she made another will, extending her bounty in a different direction, is, in the absence of any reasonable explanation for so sudden a change, an additional circumstance entitled to some weight in connection with the other facts shown.

The finding of unsoundness of mind being, in itself, sufficient to support the order denying probate, we need not stop to set forth the evidence which, in our opinion, sustains the finding of undue influence. It will suffice to say that there was testimony from which the jury could reasonably conclude that the will of November 12th had been procured to be made by influence and pressure exerted upon Mrs. Strachan to such an extent as to overcome her volition. The relations of the parties, the weakened condition, mentally and physically, of the person executing the alleged will, together with the evidence of the conduct and admissions of those charged with the exercise of undue influence, may, without more specific analysis, be referred to as ample to support the verdict in this regard.

No point is made on the instructions given by the court to the jury.

Several assignments of error in rulings on evidence are, however, pressed by the appellant.

On her direct examination Mrs. Carey testified that, after the declaration of incompetency in November, 1905, she had taken Mrs. Strachan to the King's Daughters' Home. The witness was then asked: ''How was she mentally?'' The question was objected to as incompetent, and not calling for the witness's opinion as to sanity or insanity. The objection was overruled, and the answer was: ''She was in such an infirm mental state that they refused to keep her at the King's Daughters' Home, where they do not keep insane people.'' On proponent's motion to strike out the answer as not responsive and including hearsay, the court ordered the answer stricken out, but declared, in response to a suggestion by

contestant's attorney, that the "first part of the answer, the witness's testimony as to the mental condition of Elizabeth Strachan," should remain. It is a little difficult to determine just how much, if any, of the answer, was, by this ruling, saved from the effect of the order striking out. But if we assume that the court permitted the witness to testify that the decedent was in an infirm mental state, and that the ruling was erroneous, no prejudice could have been suffered by the proponent. In the first place, the time under discussion was that immediately following the declaration of incompetency, an adjudication which of itself sufficiently established the existence of an "infirm mental state." Besides, the witness had already, in speaking of the time just preceding the incompetency proceedings, testified without objection that Mrs. Strachan was then "mentally very incompetent." Nothing of consequence was added by the testimony received over objection.

The court permitted the contestant to introduce in evidence the certificate of proof of will attached to the will of November 8, 1908, under which Mrs. Carey was acting as executrix. The proponent, while conceding the admissibility of the will, objected to the introduction of the certificate. We do not see that she was harmed by the ruling, inasmuch as the court immediately instructed the jury that the declaration in the certificate that the will of November 8th was the last will of the decedent was not binding in the contest on trial, and furthermore, in its charge at the conclusion of the testimony, expressly instructed that the probate of the will of November 8th in no way affected the validity of that of November 12th, and that, in admitting to probate the will of November 8th, the court was not passing upon the validity of that of November 12th, which was not then before it. These instructions removed the possibility of any injurious effect from the admission in evidence of the certificate.

The remaining points have to do with the overruling of appellant's objection to testimony of declarations made by Mrs. Atkinson concerning her dealings with the decedent. These declarations had no bearing whatever upon the issue of unsoundness of mind. Their only effect was to support the allegation that undue influence had been exercised. We think that such of the declarations as were made prior to the execu-

tion of the will of November 12th were properly allowed in evidence. While Mrs. Atkinson was not a beneficiary under the will, she, together with Mrs. Wadsworth, was charged in the contest with the exercise of undue influence. The contestant's theory, which was quite consistent with her allegations, was that Mrs. Atkinson and Mrs. Wadsworth had joined in a conspiracy to procure, by undue influence, the execution of the will in question. There was preliminary proof upon which this theory might well be held to have been sustained. This being so, the declarations of either party to the combination could properly be shown in evidence.

The admissibility of declarations made after the date of the will is not so clear. But these declarations were not of sufficient importance to make their introduction an error warranting reversal. Furthermore, since the verdict on the issue of unsoundness alone required a denial of probate, and no material error affected this verdict, it must be held that an error bearing upon the question of undue influence only furnishes no bar to an affirmance of the order. (*Lowe* v. *San Francisco etc. Ry. Co.*, 154 Cal. 578, [98 Pac. 678]; *Estate of Jones*, Sac. No. 2032, *ante*, p. 108, [135 Pac. 288].)

The order denying a new trial is affirmed.

Angellotti, J., and Shaw, J., concurred.