[Crim. No. 1202. First Appellate District, Division One.—February 25, 1925.

## THE PEOPLE, Respondent, v. FRANCIS BLANCHARD, Appellant.

[1] CRIMINAL LAW—VIOLATION OF SECTION 110, PENAL CODE—CONSPIRACY—ACCOMPLICE—EVIDENCE.—In this prosecution for a violation of section 110 of the Penal Code, in that defendant did willfully and wrongfully carry to and send into a county jail two hack-saws useful to aid certain prisoners therein in making their escape from said jail, it cannot be said as a matter of law that there was not sufficient evidence corroborative of other evidence showing guilt of the charge and a conspiracy necessary to its proof, given by persons who either might have been instructed by the court or found by the jury to be accomplices either in the conspiracy or the crime itself.

[2] ID.—CONSPIRACY—ORDER OF PROOF—EXTRAJUDICIAL DECLARATIONS. The proper order of proof to have the conspiracy first established before evidence of further acts done in pursuance thereof is not deemed to be essential, and reversible error will not be predicated on a different order if the conspiracy be later established; and in this connection, error in the admission of extrajudicial declarations out of the presence of defendant, in evidence by co-conspirators to establish the conspiracy, becomes insufficient for reversal.

[3] ID. — POINT IN REQUESTED INSTRUCTION COVERED BY OTHER INSTRUCTION.—In such prosecution, the request for an instruction as to the weight to be given the testimony of defendant was properly refused where the point was covered by other instruction given by the court.

[4] ID.—ACCOMPLICE—FACT—INSTRUCTIONS.—An instruction that "the testimony of an accomplice ought to be viewed with distrust" is a charge as to matters of fact and unconstitutional.

[5] ID.—INSTRUCTIONS.—In such prosecution, the jury were properly instructed on the prohibition against conviction on the testimony of an accomplice, as to who are principals, and the code definition of accomplices.

[6] ID.—ACCOMPLICE—INSTRUCTIONS.—In such prosecution, though it might have been proper for the trial court to charge specifically

1. As to whether one accepting aid to escape from jail is an accomplice of person giving the aid, note, 24 L. R. A. (N. S.) 625.
2. See 5 Cal. Jur. 513, 514.
4. See 8 Cal. Jur. 292.

that a certain person was an accomplice, it was not mandatory to do so, the general rule being that it is for the jury to determine where the facts are in any dispute.

[7] ID.—REMARK OF TRIAL COURT—CONSTRUCTION OF.—In such prosecution, a remark of the court to the effect that the jury, thanks to the gentlemen conducting the case, would be able to get home early because the facts were few and they would be able to decide quickly the guilt or innocence of defendant, cannot be construed as a mandate to hurry, and prejudicial to due consideration, when the instructions are taken as a whole, and the concluding instruction admonished the jury in terms to "calmly and carefully consider the evidence before you. . . . Discuss the evidence as presented to you as a business proposition, not acrimoniously, but in a calm manner, and pass upon the question of the guilt or innocence of this defendant."

[8] ID.—CHARACTER OF DEFENDANT—INSTRUCTIONS.—In such prosecution, an instruction given by the trial court bore no such construction as defendant claims for it as comment on the character of the defendant as bad.

[9] ID.—QUESTIONS BY DISTRICT ATTORNEY—ABSENCE OF ASSIGNMENT OF BAD FAITH—WAIVER—APPEAL.—In such prosecution, questions as to former conviction of defendant and as to alleged charges on which he was presently wanted in a certain city, asked by the district attorney on cross-examination after character evidence had been introduced by defendant, were proper unless asked in bad faith, and so assigned as misconduct; and where no such assignment was made, the point that it was improper to ask the questions may not be first taken advantage of on appeal.

[10] ID.—SELF-SERVING DECLARATIONS—DIARY.—Oral or written declarations of a defendant, not falling under specific exceptions to the rule, are not admissible in his favor, as self-serving; and a diary kept by the defendant in the instant prosecution constituted such declarations.

[11] ID.—EVIDENCE—DECLARATION AGAINST INTEREST—IMPEACHMENT. In such prosecution, a question asked by the district attorney of defendant, by way of impeachment, as to whether defendant wrote in his diary certain language showing his acquaintance with a

9. Method of proving conviction of crime in order to impeach defendant in a criminal case *as a witness,* notes, 13 **Ann. Cas.** 643; Ann. Cas. 1914C, 256.

10. Declarations of a party as admissible in his favor, note, 93 Am. Dec. 279.

Private diary as evidence, note **Ann. Cas.** 1916C, 717. See, also, 1 **R. C. L.** 470; 8 Cal. Jur. 105.

certain individual (to which question defendant answered "yes"), was proper for the purpose of showing an independent declaration against interest, admissible as such.

---

(1) 16 C. J., p. 714, n. 33, 34; 21 C. J., p. 844, n. 92 New. (2) 16 C. J., p. 649, n. 16, 17; 17 C. J., p. 330, n. 36. (3) 16 C. J., p. 1063, n. 85. (4) 16 C. J., p. 940, n. 46, p. 955, n. 62, p. 999, n. 78, 84. (5) 16 C. J., p. 972, n. 75, p. 973, n. 85, p. 1000, n. 90, p. 1001, n. 98. (6) 16 C. J., p. 928, n. 79, p. 941, n. 48 New; 17 C. J., p. 344, n. 27. (7) 16 C. J., p. 827, n. 18, p. 1049, n. 82; 17 C. J., p. 295, n. 63, p. 339, n. 64. (8) 16 C. J., p. 948, n. 87 New. (9) 16 C. J., p. 583, n. 50; 17 C. J., p. 180, n. 18; 40 Cyc., p. 2510, n. 29. (10) 16 C. J., p. 636, n. 33. (11) 16 C. J., p. 627, n. 82; p. 628, n. 99.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Daniel W. Hone, Wm. F. Kiessig and B. W. Kemper for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

ST. SURE, J.—Appeal by defendant Blanchard from conviction, on separate trial, under information brought jointly against him and two others, for violation of section 110 of the Penal Code, viz.: "Every person who carries or sends into a prison, jail, public training school or reformatory, anything useful to aid a prisoner or inmate in making his escape, with intent thereby to facilitate the escape of any prisoner or inmate confined therein, is punishable as provided in section one hundred and eight." Section 108 provides punishment of imprisonment in the state prison not to exceed ten years, and fine not to exceed ten thousand dollars.

The information charged that appellant did willfully and wrongfully carry to and send into the San Mateo County jail two hack-saws useful to aid certain prisoners therein in making their escape from said jail.

The evidence shows that James Clinton, Maurice Allen, and George Dawson were legally imprisoned in the San Mateo County jail on charge of crime committed in that

county on which they were arrested in San Francisco and thence brought to San Mateo County under proper legal process.

The sheriff testified that on February 23, 1924, the appellant visited Dawson at the jail. Appellant also testified to this visit and that he was asked by Dawson at that time to bring saws to the jail, which request he refused. He admitted having known Humphrey, one of the defendants under the joint information herein, for a short time, and that he saw the latter between six and ten times prior to and immediately following the 23d, at his own room, at one of which times, and at that place, there were a can of milk and two hack-saw blades. A discussion was had as to the possibility of putting the blades into the can of milk, or other means of getting the blades into the jail. He stated: "There was a discussion as to—if those blades could be put into a milk can, and no one had any suggestions to make as to how it could be done. It seemed implausible, and my advice was that the thing be forgotten and that everything be thrown away, and the discussion dropped on that subject." Later he stated he had reason to believe the blades were thrown away, because he saw Humphrey throw something away. On further question he testified he had reason to believe "now" that it was the can of milk.

Appellant admitted that following his arrest he had denied acquaintance with Humphrey, and also denied any conversation between himself and Dawson regarding saws. He admitted that he had previously been convicted of a felony. He stated that his visit to the jail on the 23d was with relation to some pawn tickets which the San Francisco police had sent him, and that his first visit from Humphrey, whom he had not theretofore known, was occasioned by Dawson, one of the prisoners, sending Humphrey to him, to arrange about attorneys. He stated that he and Humphrey were out one evening "looking for three people." He did not name the people. His employer for four years testified as to his honesty, as did a woman in whose home she testified he had lived for three years. They stated they knew nothing of his former conviction, nor of any charges on which he was presently wanted in San Francisco.

[1] To this point, and standing alone, has been stated the evidence on which reliance must be placed as corrobo-

rating the evidence to show guilt of the charge and a conspiracy necessary to its proof, given by four people who either might have been instructed by the court or found by the jury to be accomplices either in the conspiracy or the crime itself. Taken with the bare evidence, as stated, were the inferences the jury might draw from statements denying acquaintance with Humphrey and conversation with Dawson at the time of arrest but testified to on the trial; the fact that pawn tickets were sent him by the police in San Francisco, which fact he stated was the occasion of his visit to Dawson; and his association with one stated to be a stranger to him theretofore, but known by him to have been arrested with the prisoners and with whom he discussed the matter of the possibility of getting saws into the jail, and whom he thereafter continued to see. In this connection is a discrepancy as to the occasion on which he stated Humphrey brought the can of milk and saws to his room; it being stated as the 26th, 27th, or 28th, and later, in other connection, positively and certainly stated to be the 25th. There was unexplained the evident lack of connection between his testified continuous residence from the age of a few weeks to the time of trial, with his aunt, and the visits testified to "up to my room" and the testimony of the character witness not shown to be his aunt, that he lived in her home for three years; circumstances probably noted by the jury. We cannot say, as matter of law, with the above and other inferences which might be drawn by the jury, or disbelief by them of the statements of appellant on disputed points, that this was not sufficient corroboration, though standing by itself as a cold record, it may be slight and entitled to but little weight. There was ample evidence by those who might be considered accomplices of both the conspiracy and the crime here charged.

Part of the same evidence given here as corroboration of the main charge, was also corroborative of the testimony of one or more of the conspirators, to establish the conspiracy said to be necessary as foundation for proof of the main charge. As the main charge, so the conspiracy was testified to by a co-conspirator or accomplice, and the corroboration served to establish it. **[2]** The proper order of proof to have the conspiracy first established before evidence of

further acts done in pursuance thereof is not deemed to be essential, and reversible error will not be predicated on a different order if the conspiracy be later established. (*People* v. *Donnelly,* 143 Cal. 394, at 397, 398 [77 Pac. 177]; *People.* v. *Carson,* 166 Cal. 164, at 171 [99 Pac. 970].) In this connection, error in the admission of extrajudicial declarations out of the presence of defendant, in evidence by co-conspirators to establish the conspiracy, becomes insufficient for reversal.

Appellant's main argument is grounded on the foregoing propositions.

He further complains of error in refusal to give instructions, and in prejudice resulting from instructions given. [3] The first of the requested instructions was as to the weight to be given the testimony of appellant. The point was covered by other instruction given by the court, and the request was not improperly refused for that reason alone. [4] The seventh requested instruction that "the testimony of an accomplice ought to be viewed with distrust" has been held to be a charge as to matters of fact and unconstitutional. (*Hirshfeld* v. *Dana,* 193 Cal. 142 [223 Pac. 451].) [5] The jury were properly instructed on the prohibition against conviction on the testimony of an accomplice, as to who are principals, and the code definition of accomplices. [6] Though it might have been proper for the court to charge specifically that Humphrey was an accomplice, the cases have not held that it is mandatory to do so, the general rule being that it is for the jury to determine where the facts are in any dispute. (*People* v. *Coffey,* 161 Cal. 433, 436 [39 L. R. A. (N. S.) 704, 119 Pac. 901]; *People* v. *Truax,* 30 Cal. App. 471 [158 Pac. 510].) It has been held not to be reversible error to so charge. (*Vails* v. *State,* 59 Tex. Cr. 340 [128 S. W. 1117].)

[7] A remark of the court to the effect that the jury, thanks to the gentlemen conducting the case, would be able to get home early because the facts were few and they would be able to decide quickly the guilt or innocence of defendant, does not bear appellant's construction of it as a mandate to hurry, and prejudicial to due consideration. The instructions are to be taken as a whole, and the concluding instruction admonished the jury in terms to

"calmly and carefully consider the evidence before you. . . . Discuss the evidence as presented to you as a business proposition, not acrimoniously, but in a calm manner, and pass upon the question of the guilt or innocence of this defendant." The same may be said regarding the attack on the instruction given by the court with reference to the presumption of innocence attaching, and the opening of opportunity for character attack on defendant by himself putting his character in evidence. [8] We think it bore no such construction as appellant claims for it as comment on the character ·of the defendant as bad. [9] In this connection also objection was made to the question of the district attorney as to former conviction of appellant and as to alleged charges on which he was presently wanted in San Francisco. The question was asked on cross-examination after character evidence had been introduced by appellant, and was shown to have been seriously asked. Appellant admitted the former conviction. The questions were proper unless asked in bad faith, and so assigned as misconduct. There was no such assignment made, and the point may not be first taken advantage of on appeal.

Alleged error as to the admission of evidence has been covered in discussion of the evidence of conspiracy testified to by co-conspirators.

Attack is made on the refusal of the trial court to allow the introduction of a diary kept by appellant, in appellant's behalf, and the "indirection" by which the district attorney used the same matter to prove appellant's acquaintance with Humphrey. [10] It is well settled that oral or written declarations of a defendant, not falling under specific exceptions to the rule, are not admissible in his favor, as self-serving. The diary constituted such declarations. [11] The district attorney did not introduce the diary in evidence; it is true that he asked a question of defendant, reading a statement from a page of the diary, but it was asked on one point to impeach the appellant's testimony on that one point, and in the form, "did you on the 15th day of February, 1924, write the following language, in your own wording: 'nothing unusual today. Humphrey came up in eve. Sat around and played records'?" The appellant answered "yes."

It might well, so far as the diary was concerned, have been written anywhere else, and the question could have been asked with the same effect. It was an independent declaration against interest, admissible as such. The use of section 1854 of the Code of Civil Procedure was not necessary. As to section 2047 of the Code of Civil Procedure, concerning the refreshing of memory by the use of writings, the court explicitly stated that the diary might be used for that purpose.

The jury found the defendant guilty, and motion for probation was denied.

Taken as a whole, and with the mandate of section 4½ of article VI of the constitution before us, we are of the opinion that the judgment of conviction should be affirmed.

It is so ordered.

Tyler, P. J., and Knight, J., concurred.