**STATE of Missouri, Respondent,**

v.

**Harold E. CRUMP, Appellant.**

**No. 54858.**

Supreme Court of Missouri, Division No. 1.

June 8, 1970.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Michael J. Drape, Knowlton & Drape, Kansas City, for appellant.

HOLMAN, Judge.

Defendant was charged with the sale of a stimulant drug, i. e., dl-amphetamine sulfate, under the provisions of § 195.240, V.A.M.S. The jury found him guilty of the offense charged and the court, under the Second Offender Act, sentenced him to imprisonment for a term of seven years. See §§ 556.280 and 195.270, V.A.M.S. Defendant has duly appealed.

At about 10:40 p. m. on January 12, 1969, federal narcotics agents Hanson and Francar went to 633 West 39th Street in Kansas City, Missouri, where they contacted a man by the name of Shannon. At that time they learned from Shannon that defendant, earlier that week, had offered to sell "speed," which is slang for amphetamine. Shannon accompanied the agents to an apartment at 409 Tracy Street. They were admitted to the apartment by Butch Matthews, and also talked with Roberta Inzer who was known as Gigi. Shortly thereafter, Matthews left the apartment and returned with defendant. The agents asked defendant if they could get some "speed" and, at his request, they drove him to an all-night market where he could make a telephone call. They returned to the apartment and Matthews volunteered to drive defendant to the place where he would obtain the amphetamine. When defendant returned in about 20 minutes he displayed a tinfoil packet in his hand but said that he wanted to deal through Shannon. After considerable discussion as to whether the quantity was worth the $50 defendant had asked for the drug Hanson finally paid $50 to Matthews, who had advanced the money to defendant, and received the drug from Shannon. Agent Hanson delivered the packet the next day to a chemist for the

Food and Drug Administration who testified that she examined it and found it to be pure 100% dl-amphetamine sulfate.

Defendant did not testify. The only evidence he offered was the testimony of Gigi Inzer who stated that she was in the apartment but saw no sale made by defendant to the federal agents, and the testimony of Floyd Matthews who stated that he had also been charged with this sale and had entered a plea of guilty to the charge.

■ The first point briefed by defendant is that the court erred in admitting in evidence the certified serial record of the Department of Corrections. This exhibit contained proof of defendant's conviction of the felony of receiving stolen property and his sentence and imprisonment therefor. It is said that the exhibit is not authenticated in any manner. We have examined the exhibit and find that it is signed by the Director of the Division of Classification and Assignment and sworn to by him before a notary public. We have repeatedly held exhibits of this type to be admissible. State v. Tallie, Mo. Sup., 380 S.W.2d 425 [6]. The contention is without merit and is overruled.

■ We will next consider the contention that the information is fatally defective because it alleges the sale of dl-amphetamine sulfate which is said not to be on the list of drugs shown on State's Exhibit No. 4. That exhibit is the list of stimulant drugs filed with the Secretary of State by the Division of Health of the Department of Health and Welfare, as required by § 195.230, V.A.M.S. Defendant cites State v. Bridges, Mo.Sup., 398 S.W.2d 1, in which we held that an indictment charging the transfer of a stimulant drug could not be sustained unless such drug was included on the list which we are now considering.

We do not agree with defendant's contention that the drug was not listed. The list contains dl-amphetamine, dextro-amphetamine sulfate, and levo-amphetamine sulfate. It appears from the exhibit that "d" is an abbreviation for dextro, and "l" is an abbreviation for levo. It therefore appears that dl-amphetamine sulfate is a combination of both dextro and levo-amphetamine sulfates. We think the average person reading the list would understand that dl-amphetamine sulfate is a proscribed stimulant drug. We therefore disallow this point.

■ The next contention of defendant is that the trial court erred in refusing to give his proffered instruction submitting the issue of entrapment. The question presented is whether there was sufficient evidence to justify an instruction on that issue. It will be remembered that the agents had learned from Shannon that defendant had offered to sell "speed" (amphetamine) earlier that week. Shannon took them to an address where contact was made with defendant. The agents asked defendant if they could get some "speed" and, at his request, drove him to a place where he could make a telephone call. After defendant had obtained the drug the agents indirectly purchased it from him. This evidence is very similar to that appearing in State v. Napolis, Mo. Sup., 436 S.W.2d 645, in which we held the evidence was insufficient to warrant an instruction on entrapment. Cases such as State v. Decker, 321 Mo. 1163, 14 S.W. 2d 617, cited by defendant, are clearly distinguishable on the facts. We rule that the court did not err in refusing the instruction on entrapment.

■ The final contention is that the court erred in making the following statement to the jury just before it left the courtroom to begin deliberations: "Members of the jury, you have heard the evidence in this case for the last two days. The Court has instructed you as to the law in this case and you have heard the arguments of the two attorneys representing the State and the defendant. This matter is now in your hands, and the Court will ask you to go to your jury room, and when you arrive there you will select from your

number a foreman, and when you have done that you will deliberate on your verdict until you have reached one. Of course, you will have with you the Court's instructions and a separate sheet of paper on which to write your verdict. Now, it is 2:30 and you have plenty of time to arrive at a verdict between now and the time we adjourn at 4:30. It hasn't been a long case. It has been fairly short and the issues are clear-cut one way or the other. You will arrive at a verdict and you will either acquit this man or find him guilty, and it shouldn't take a great deal of time one way or the other."

After the jury retired defendant objected to the last part of the statement on the ground that it limited the jury to two hours in which to arrive at a verdict. He did not request that the court take any action to correct the statement. Actually, the objection was not timely. It should have been made (out of the hearing of the jury, if desired) while the jury was still in the courtroom so that the judge would have had an opportunity to make corrective statements, if he desired, without bringing the jury back after it had retired.

While we do not desire to be considered as approving the statement, we do not believe, under the circumstances of this case, that it had the effect of coercing the guilty verdict. No Missouri case has been cited which involves a statement of this nature made prior to the time the jury began its deliberations. This court has, however, held that an instruction given after a period of deliberation urging the jury to make an effort to agree on a verdict is not ordinarily prejudicial. State v. Roberts, Mo.Sup., 272 S.W.2d 190; State v. Jackson, Mo.Sup., 446 S.W.2d 627 [3].

It is stated in 23A C.J.S. Criminal Law § 1187, p. 469, that a remark to the jury by the court "that the facts are few and the jury should be able to decide quickly the guilt or innocence of accused is not error." Also, statements similar to the one under consideration were held not to constitute error in the following cases: Claiborne v. United States (8th Cir.), 77 F.2d 682 [14]; People v. Blanchard, 71 Cal. App. 402, 235 P. 467 [7]; and People v. Higbee, 78 Cal.App. 455, 248 P. 927 [4].

There is nothing in the remarks of the court to indicate in any manner its views concerning the facts or as to the guilt or innocence of defendant. And surely the jurors would understand that they could take such time as might be needed to fully consider the evidence and the court's instructions before arriving at a verdict, even though the court had urged that they act with dispatch. It would be an unwarranted reflection on the integrity of the jurors to assume that because of the remarks of the court any of them would agree to a verdict which was contrary to his true belief. We accordingly rule that the statement in question was not prejudicial and did not constitute reversible error.

The judgment is affirmed.

SEILER, P. J., BARDGETT, J., and HESS, Sp. J., concur.