STATE of Missouri, Respondent,

v.

David E. WHITE, Appellant.

No. WD 40505.

Missouri Court of Appeals, Western District.

Jan. 9, 1990.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

Melinda K. Pendergraph, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

BERREY, Presiding Judge.

David E. White, in a consolidated appeal, challenges: (1) his conviction and five-year sentence for sexual assault in the first degree, § 566.040, RSMo 1986; and (2) the denial of his Rule 29.15 motion alleging ineffective assistance of counsel. White presents three points on appeal: (1) that the hearing court erred in its denial of his Rule 29.15 motion as trial counsel was ineffective where he failed to interview potential alibi witnesses and failed to interview witnesses who were called to testify, thereby prejudicing him; (2) that the trial court erred in failing to declare a mistrial *sua sponte* when certain improper questions were asked by the prosecutor; and (3) that the trial court erred in informing the jury of the cold, freezing weather and asking them whether they wished to deliberate

that evening or return in the morning, thereby coercing the verdict.

Appellant was charged with the Class C felony of sexual assault in the first degree, § 566.040, RSMo 1986. This charge was based on events which occurred the evening of July 5, 1987. The victim, S.G., a fourteen year old girl, and a female friend went to Chillicothe, Missouri, and were in the vicinity of the courthouse at approximately 9:00 p.m. Appellant was riding in a car driven by a man named Juan Cox. S.G., who had met appellant on a previous occasion, and her friend went riding around with appellant and Cox. Cox drove to his trailer in Brookfield, Missouri, where the group watched television.

Appellant asked S.G. back to the trailer's bathroom, telling her he wished to show her something. She went back into the bathroom. Appellant turned off the lights and locked the door. He told her that she wasn't going to get out until she kissed him. After a time she complied with his request but he still refused her egress from the bathroom. Appellant picked S.G. up and laid her on the bathroom floor, got on top of her and held her hands down. He unbuttoned her shirt, unfastened her bra, took down her pants and forced her to have sexual intercourse with him.

After the incident, S.G. testified that "he offered me $100 to keep my mouth shut." Appellant then stuck $20 in S.G.'s pocket. They went back into the living room. Appellant and Cox went outside, where appellant told Cox, "I told you I would get it," which Cox interpreted as a remark meaning that appellant had had sex with S.G. S.G. told her friend what had happened.

The four left the trailer and drove to the apartment of Sheila White, appellant's sister, and spent the night. They returned to Chillicothe the following morning. S.G. did not report the incident.

On July 23, 1987, witness Billy Drake saw the appellant at a gas station in Brookfield. Appellant asked for a ride to Chillicothe, identifying himself as Steve Woods. He then asked Drake whether he knew S.G. Drake told appellant that he did know her and that she had confided to him the information that David White had raped her.[1]

That evening, appellant confronted S.G. at the courthouse in Chillicothe, attempting to get her to repeat her statement about the rape. He told her to meet him at "Pam's Place," a restaurant. When S.G. told him that she couldn't meet him, she testified that he responded by saying, "that if I didn't show up, he was going to come into my apartment and do it all over again. And he said that this time I wouldn't be able to tell anybody."

S.G., Michelle Williams (one of S.G.'s friends) and Billy Drake went to S.G.'s home. S.G. told her mother what had been going on. Appellant came to the apartment and yelled to S.G. to come down. The police were summoned. Drake told the officers who had responded to the summons that S.G. had been raped by appellant. S.G. then talked to the police and told them about the rape.

On August 3, 1987, appellant was arrested. He denied sexually assaulting S.G. At trial, appellant presented an alibi defense, claiming that he was elsewhere at the time of the rape with Juan Cox, his girlfriend Connie Rasmussen, and her son, Shawn. He claimed that Cox testified against him in retaliation after he accidently broke the window of Cox's car. The jury returned a verdict of guilty, from which this appeal is taken.

On August 22, 1988, appellant filed a *pro se* Rule 29.15 motion alleging ineffective assistance of counsel. Counsel was appointed and an amended motion was filed. On February 17, 1989, an evidentiary hearing was held. Appellant testified that his trial counsel did not call the witnesses that appellant had discussed with him. Appellant's trial counsel, Leman Atherton, testified that he had discussed the case repeatedly with appellant. During their early discussions appellant told him that he had taken a trip to Kansas City on the night in question and mentioned some names of witnesses. In the week prior to

1. Drake did not know that appellant was David White at this time.

trial, Atherton had not interviewed any witnesses, as he had not received a list from appellant until three days before the trial, at which time he promptly requested subpoenas. On March 31, 1989, appellant's motion was denied. This appeal follows.

Appellant's first point contends that the hearing court clearly erred in denying appellant's Rule 29.15 motion in that appellant's trial counsel failed to interview Jeffrey and Norman Glasgow, witnesses called by him to testify. Appellant further contends that counsel was ineffective in failing to interview and call certain other alibi witnesses. Appellant then concludes that counsel's failing prejudiced his defense.

■ An appellate court, in post-conviction proceedings, limits its review to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). These findings, conclusions and judgment are only found to be clearly erroneous when the appellate court is left with the definite and firm impression that a mistake has been made. *Meyer v. State*, 770 S.W.2d 385 (Mo.App.1989). The movant has the burden of proving his assertions by a preponderance of the evidence. *Id.*

■ To prevail upon a claim of ineffective assistance of counsel, a movant must pass the two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, movant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. This requires a showing that counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised in similar circumstances. *Sanders v. State, supra*, 738 S.W.2d at 857. Second, the defendant must prove that he was prejudiced by counsel's deficient performance. *Strickland v. Washington, supra*, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2065.

■ Counsel has a duty to make reasonable investigations or to make reasonable decisions which would render particular investigations unnecessary. *Id.* at 691, 104 S.Ct. at 2066. In evaluating counsel's decision to forego an investigation, all of the particular circumstances of the case are examined in the light of their reasonableness with great deference given to counsel's judgment. *Lytle v. State*, 762 S.W.2d 830, 837 (Mo.App.1988). Movant bears the burden of proving that such investigation would have uncovered evidence which would have improved his position at trial. *Id.*

■ In the instant case, the record does not show any error on the part of attorney Atherton. Appellant first complains of counsel's failure to interview Jeffrey and Norman Glasgow, who were called to testify for the defense, and counsel's failure to interview the state's witnesses. Atherton was supplied with complete discovery by the state. He reviewed the statements given by the state's witnesses. Atherton was not surprised by any of the testimony presented. His only surprise was that witness Cox actually showed up for trial, as appellant had informed him that he didn't think Cox would be there. Jeffrey and Norman Glasgow's testimony was also no surprise to Atherton as, "[t]hey testified on the stand the same thing he [appellant] said they'd say...." Thus, appellant was certainly not prejudiced or disadvantaged by Atherton's inability to interview these witnesses prior to trial.

■ More complicated, however, are appellant's allegations that attorney Atherton failed to interview and call various alibi witnesses, including Sheila White, appellant's sister. Counsel has a duty to make reasonable investigation which generally includes contacting potential witnesses named by his client who might be able to aid the defense. *Perkins v. State*, 750 S.W.2d 594, 596–97 (Mo.App.1988). Counsel's actions, however, are based, "on information supplied by the defendant." *Strickland v. Washington, supra*, 466 U.S.

at 691, 104 S.Ct. at 2066. "It is not ineffective assistance for counsel to fail to investigate witnesses that he does not know exist." *Edwards v. State,* 772 S.W.2d 703, 704 (Mo.App.1989). In other words, counsel is not charged with the duty to be psychic. Despite repeated requests, counsel was informed of only two alibi witnesses by name, Connie Rasmussen (who testified for appellant at trial) and Sheila White. Atherton testified that in his discussions with appellant, "He had talked a lot of names that were not witnesses. He wanted a lot of things that would not have been admissible in any court."

Finally, three days prior to trial, appellant supplied counsel with a list of fourteen names, including Sheila White, (who for the first time appellant requested be subpoenaed), Norman Glasgow, Jeffrey Glasgow and Tommy Heather. Martin Burns and Rachel Williams, who testified at the Rule 29.15 proceeding were not even on this list. Atherton went to work trying to subpoena the witnesses on the list, but many failed to show due to the insufficient amount of time left before the trial for proper service. A request for a continuance was denied.

■ In order to show that defense counsel was ineffective in not calling a witness, appellant must, among other things, show that the testimony of said witness would have presented a viable defense. *Canterbury v. State,* 781 S.W.2d 107, 110 (Mo. App., W.D. 1989). Mere speculation as to what that testimony might have been is not sufficient. *Id.* Of the numerous witnesses appellant complains should have been called, only three appeared at the Rule 29.15 hearing, Martin Burns, Rachel Williams and Tommy Heather. None of appellant's other "uncalled" witnesses appeared and therefore their help in providing a viable defense for appellant is problematic.

■ Of the three Rule 29.15 witnesses, only Tommy Heather was on the list provided by appellant to counsel before trial. Again, counsel cannot be held responsible for witnesses he is unaware of and thus fails to investigate. Tommy Heather's proposed testimony was that appellant on July 5, 1987, told him that appellant, Connie Rasmussen and Juan Cox were going to Kansas City. Besides being clearly hearsay, this evidence is also cumulative, and of no use to appellant. Appellant's Point I is denied.

Appellant's Points II and III concern alleged error in his trial on the sexual assault charge. In Point II, appellant alleges that the trial court erred by not declaring a mistrial *sua sponte* after appellant was asked whether he had ever been arrested for disturbing the peace and when the prosecutor elicited testimony from the victim, S.G. regarding a subsequent sexual assault on her committed by appellant.

The first incident complained of by appellant occurred during his cross-examination by the prosecutor. The prosecutor asked whether appellant had a charge pending against him in Chillicothe for disturbing the peace. Defense counsel objected and the court sustained the objection. The other incident complained of occurred during the course of S.G.'s testimony. She testified that after the incident for which appellant was being tried, "he forced me to have sexual intercourse with him again." Defense counsel objected. The trial court sustained the objection and instructed the jury to disregard the answer given by the witness. No request for mistrial was made.

■ Counsel was granted the relief that he sought, thus nothing is preserved for review. *See State v. Mabry,* 602 S.W.2d 1, 2 (Mo.App.1980). If the more drastic remedy of a mistrial was warranted under the circumstances presented here, then it was up to defense counsel to request that relief. *Id.; See also State v. Ward,* 713 S.W.2d 273, 275 (Mo.App.1986). The adequacy of the corrective action taken by the court is assumed. *Id.* Appellant's Point II is denied.

Finally, in Point III, appellant complains that the trial court acted improperly by informing the jury of the cold, freezing weather and asking the jurors whether they wished to deliberate that evening or come back the next morning. Appellant

contends that the three or four jurors who were outvoted and wished to return the following morning were coerced and may have felt compelled to return a guilty verdict. The appellant charges that, "[t]he court constantly and repeatedly warned the jury to 'speed it up.'"

A review of the record does not support appellant's assertion. The court initially polled the jury as to whether they wished to stay or to return.

THE COURT: Ladies and gentlemen, I had—In this trial, we have—We will be taking a break to get instructions ready. My experience would tell me that it's going to take a minimum of 30, maybe as much as 45 minutes—I hope no more than that—to get the instructions ready, after which each attorney will be given whatever they ask, but probably would take, between the, close to an hour of argument, which they're entitled to, on behalf of their respective parties. That means the earliest we can get the case to you for deliberation is somewhere around 7:00 this evening.

Now, it's a cold night. I've had one phone call today about pipes at home that are frozen for my horses. That's of no concern to me, now, because I think it's been taken care of. Some of you may be worrying about the same things at home. Would you rather try to finish the case tonight or come back in the morning? How many would like to try to finish it tonight, raise their hands. Seems like most.

How many would like to come back in the morning? Three or four.

Counsel, do you all have—Would you rather break and have time for arguments and preparation in the morning?

MR. ATHERTON: If we could, I'd rather finish it tonight, Judge.

MR. CASEY: That's fine, Judge. I don't care.

As it is clear from the above statement, appellant's own attorney expressed a desire to finish the case that night. Furthermore, the judge never told the jury to hurry their deliberations. His directions to hurry were addressed to counsel on the subject of pre-paring instructions. What was actually said was:

THE COURT:—a bit extraordinary because I think tonight is going to be colder than last. I don't know if there will be as much wind as there was. But I wonder, those of you who—who would prefer to finish it this evening, would it be possible that a phone call would take care of it? And I want to ask the same question—Let me just ask that question generally: Those of you who would like to come back in the morning, would you—Is it possible that you could make some phone calls and get the problem taken care of at home, or you feel like it's something that only you can take care of?

Instructions, it sounds like we might be able to do it a good bit faster than I said to you. So, we might speed that up by several minutes.

All right. Then, I think, if that's the case, then, we'll just take a break, and we'll try to hurry as much as we can.

 Appellant cites *State v. Mason,* 588 S.W.2d 731 (Mo.App.1979), for the proposition that is improper for the court to urge the jury to strive for a verdict by a certain time. This is certainly correct. However, the court in this case set no time limits or told the jury what their verdict should be. In *State v. Crump,* 454 S.W.2d 519, 522 (Mo.1970), the trial judge stated, "Now it is 2:30 and you have plenty of time to arrive at a verdict between now and the time we adjourn at 4:30." On appeal it was held that the remark was not prejudicial and did not constitute reversible error. The court in *Crump* noted that nothing in the remarks of the court indicated its views on the innocence or guilt of the defendant. *Id.* at 522. Such is also the case here. There was nothing in the court's remarks to suggest that the jury could not take all of the time it needed in reaching a verdict. The court's remarks do not constitute plain error. Appellant's Point III is denied.

Accordingly, the judgment of the motion court in appellant's Rule 29.15 motion is

affirmed. The judgment of the trial court convicting appellant of sexual assault in the first degree, § 566.040, RSMo 1986, is affirmed.

All concur.