**STATE of Missouri, Respondent,**

**v.**

**William Cullen BRIDGES, M.D., Appellant.**

No. 50525.

Supreme Court of Missouri,
En Banc.

Jan. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, James P. Jouras, Sp. Ass't. Atty. Gen., Kansas City, for respondent.

David M. Grant and Raymond Howard, Jr., St. Louis, for appellant.

FINCH, Judge.

Defendant was convicted of unlawfully distributing and transferring amphetamine hydrochloride, a stimulant drug, and the jury assessed his punishment at a fine of five hundred dollars. We have jurisdiction of his appeal because the construction of the Constitutions of the United States and of the State of Missouri is involved. Section 3, Article V, Missouri Constitution, V.A.M.S. After the adoption by Division One of this court of an opinion affirming the conviction, the case was transferred, on request, to the court en banc by reason of the fact that there had been a dissenting opinion to the divisional opinion.

The indictment under which defendant was tried was as follows: " * * * That WILLIAM CULLEN BRIDGES, M.D.,

physician and surgeon, on the 12th day of May (1962), * * * did unlawfully, designedly, and wilfully distribute and transfer one ounce of amphetamine hydrochloride, to-wit: by selling a prescription for one ounce of amphetamine hydrochloride to PEARL WALLACE, also known as RAE WALKER, which was not for medicinal purposes, for Seven Dollars, which was not in the usual course of business or practice, contrary to Section 195.240, Missouri Revised Statutes, * * *."

Pertinent sections and parts of sections of Chapter 195 (all references are to RSMo 1959, V.A.M.S., unless otherwise indicated) relevant to the charge against defendant are as follows:

"195.220. Definitions.—As used in sections 195.220 to 195.270, the following terms mean:

\* \* \* \* \* \*

(2) 'Stimulant', amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or animal.

"195.230. Division of health to file list of drugs.—The division of health of the department of health and welfare shall prepare a list of all drugs falling within the purview of the terms barbiturate or stimulant. Upon preparation, a copy of the list shall be filed in the office of the secretary of state.

"195.240. Possession or distribution of barbiturates or stimulants regulated.—The possession, sale, distribution, or transfer of any drug which is designated by the division of health to be a barbiturate or stimulant is unlawful, except in the usual course of business or practice, or in the performance of their official duties by the following persons:

(1) Persons licensed under the provisions of chapters * * * 334, * * *, RSMo."

Chapter 334 provides for the licensing of physicians and surgeons.

On August 31, 1959, the Division of Health, in accordance with § 195.230, filed in the office of the Secretary of State a list of stimulants which was as follows:

"LIST OF STIMULANTS
AMPHETAMINES

Definition of Amphetamine:

Any stimulant drug consisting of phenylisopropylamine and all derivatives thereof, except preparations intended for use in the nose and which cannot be rendered fit for internal use shall be considered a part of this list.

| Chemical Classification | Generic Name |
| --- | --- |
| dl–1–phenyl–2–amino-propane sulfate | Amphetamine Sulfate USP |
| d–1–phenyl–2–amino-propane sulfate | Dextro-amphetamine Sulfate USP |
| trimethylphenethylamine | Mephentermine USP |
| desoxyephedrine hydrochloride; d–1–phenyl–2–methyl-amino-propane hydrochloride | Methamphetamine Hydrochloride USP |
| 1–phenyl–2–nicotinyl-amino-propane | Nicotinyl-amphetamine" |

The evidence on behalf of the state would justify the following statement of facts: Defendant is a physician and surgeon in the City of St. Louis. On the evening of May 12, 1962, Pearl Wallace went to defendant's office to obtain a prescription for amphetamine hydrochloride. She had taken drugs for many years and had used amphetamine for five years. She would dissolve it in water and inject it into her veins with a hypodermic needle. At the time in question she was not under medication, treatment or care of a doctor for anything. She did not discuss her weight with the defendant or seek relief from him to enable her to lose weight. She simply went to his office and asked for a prescription. Defendant wrote out a prescription for two ounces of amphetamine hydrochloride and delivered it to Pearl Wallace, for which she paid him the sum of seven dollars. She then took the prescription to a drugstore, where she had it filled. The pharmacist who filled the prescription testified that he did fill the prescription for Pearl Wallace, and he identified amphetamine hydrochloride as a derivative of amphetamine. He testified that the principal difference between it and amphetamine sulphate, another derivative of amphetamine, was that the hydrochloride was more soluble than the sulphate. Other witnesses testified that in the months preceding May 12, 1962, they had gone to defendant's office and purchased prescriptions for amphetamine hydrochloride.

Defendant first attacks on constitutional grounds the statute under which the indictment against defendant was returned. These constitutional questions can be divided into three subdivisions.

■ First, defendant contends that the portion of § 195.240 which reads: " * * * except in the usual course of business or practice, or in the performance of their official duties by * * * [physicians]" is too vague, uncertain, ambiguous and indefinite to provide an ascertainable standard of guilt. This, says defendant,

causes difficulty in determining just what is prohibited and prevents one charged from having an adequate opportunity to prepare a defense, thereby depriving him of due process. Cases such as Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922, which consider the standard of certainty required in criminal statutes are cited. We agree with the rule therein laid down. The difficulty is that defendant does not demonstrate that the statute here involved violates those principles. The statute in question proscribes the possession, sale, distribution, or transfer of certain drugs. Physicians and others specified in the statute are excepted therefrom in "the usual course of business or practice, or in the performance of their official duties." In other words, a physician acts lawfully in possessing, selling, distributing, or transferring such drugs so long as he does so in the usual course of his medical practice in treating patients and prescribing for them. Such language is not vague or uncertain. The phrases "usual course of business or practice" of such persons as physicians and surgeons and "performance of their official duties" by such persons as officials of enforcement agencies are in such common use that any reasonable man can determine their meaning. Surely, one licensed as a physician knows when he is acting in the usual course of his practice of medicine. The same can be said for one in public office as to when he is performing his official duties. We rule this contention against defendant.

■ Second, defendant alleges denial of due process in that the statute made no provision requiring the Division of Health to give any kind of notice, actual or constructive, of the filing of a list of drugs designated by that agency pursuant to the statute. This contention also is without merit. Section 195.220 defines "stimulant" and by § 195.230 the Division of Health is directed to prepare a list of all drugs falling within the said definition, and to file such list in the office of the Secretary of State. Thus, by § 195.220 defendant

is put on notice of and given a clear standard of what drugs (barbiturates and stimulants as defined) are involved in the enactment, and by § 195.230 he is directed to where he can find a list of all the proscribed drugs. It is a rule deep within our law that ignorance of the law is no excuse, and under this maxim defendant is presumed to know the law. That law told the defendant what drugs were proscribed and where a list could be found. This was sufficient.

■ Third, defendant claims that the statutes here involved are unconstitutional under Section 1 of Article II of the Constitution of Missouri, V.A.M.S., in that they unlawfully delegate legislative authority to the Division of Health to designate drugs covered by the act, with no standard, rule or reasonable guide set out in the statutes for the Division of Health to follow. Cases cited include Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 15 S.W.2d 343; State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296, and State ex rel. Ludlow v. Guffey, Mo., 306 S.W.2d 552. In substance, these cases hold that an enactment which delegates authority is constitutional if a definite standard is provided and no arbitrary discretion is involved. The above cases and cases such as State ex rel. Mackey v. Hyde, 315 Mo. 681, 286 S.W. 363, provide certain exceptions where there is greater latitude, but we need not consider those exceptions because here the Division of Health is limited to a definite standard for its delegated duty, and no arbitrary discretion can be or is involved. Section 195.220 defines "stimulant" as "amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or animal." This provides a definite standard to which the Division of Health is limited in the performance of its delegated duty. There is virtually no discretion in the preparation and filing of the list of drugs. The only way this limited discretion could be abused would be by listing a drug which does not fall within the definition (something not amphetamine or a derivative thereof or a derivative not having an exciting effect on the central nervous system of a human or animal), and prosecution involving such a drug would not support a conviction under the act. Obviously, it is possible from time to time that there will be additional derivatives of amphetamine which have an exciting effect on the nervous system, and the statute permits the Division of Health to list such drugs and file the list in the office of the Secretary of State, but the Division still is limited to listing only amphetamine or derivatives of amphetamine which have an exciting effect on the nervous system of a human or animal. This contention is overruled.

Defendant's attack on the indictment is two-fold, as follows:

■ First, it charges no offense because it charges merely the distribution and transfer of a prescription for amphetamine hydrochloride, whereas the statute prohibits the sale, distribution or transfer of the proscribed drug itself. Defendant's contention overlooks the fact that the indictment does charge the distribution and transfer of the drug amphetamine hydrochloride. It charges that this was accomplished by selling a prescription therefor to Pearl Wallace. The indictment in question charges: (1) that appellant was a physician; (2) that on May 12, 1962, he unlawfully distributed and transferred one ounce of amphetamine hydrochloride; (3) by selling a prescription for amphetamine hydrochloride; (4) to Pearl Wallace; (5) which was not for medicinal purposes; (6) for Seven Dollars; (7) which was not in the usual course of business or practice; (8) contrary to Section 195.240, Revised Statutes of Missouri. The indictment substantially follows the language of the statute and is sufficient. State v. Crawford, Mo., 251 S.W.2d 76; State v. Anderson, Mo., 232 S.W.2d 909. See also Jin Fuey Moy v. United States, 254 U.S. 189, 41 S. Ct. 98, 65 L.Ed. 214, wherein the Supreme

Court of the United States upheld a conviction for illegal sale of a narcotic based on an indictment which charged sale by issuing and dispensing to a particular person a prescription for the narcotic. See also Nigro v. United States, 117 F.2d 624, 631, 133 A.L.R. 1128, wherein the court said: "This court is unequivocally committed to the view that a registered physician who issues a prescription for morphine sulphate to an addict not in the course of his professional practice, and the addict upon such prescription purchases morphine even from an innocent druggist, the physician participates in the illegal sale and is guilty of 'selling' within the meaning of the statute." We hold that the indictment is not subject to attack on the basis that it failed to charge defendant with distribution or transfer of the drug. The indictment need not recite specifically that the prescription was filled. This does not mean, however, that the verdict-directing instruction would not be required to submit to the jury the question of whether under the evidence they found that the prescription actually was filled so that the proscribed drug was obtained by the alleged purchaser.

■ Second, defendant contends the indictment is fatally defective because it alleges a transfer of amphetamine hydrochloride, a drug not listed on the list of drugs filed by the Division of Health with the Secretary of State pursuant to § 195.230, and hence charges no offense under the statute.

■ Defendant, by the indictment, was charged with a violation of § 195.240. The indictment specifically so states. That section of the statute proscribes the possession, sale, distribution, or transfer of certain drugs unless one of the exceptions provided in the statute is applicable. What drugs are proscribed by § 195.240? They are barbiturates or stimulants "designated by the division of health to be a barbiturate or stimulant" within the definition set out in § 195.220. How does the Division of Health so designate a drug? By pre-

paring a list thereof which is then filed in the office of the Secretary of State. This has been done by the Division of Health and a printed .copy of the list as filed was offered in evidence by the State as Exhibit 2. Amphetamine hydrochloride was not included on that list. It thus would appear that the indictment may not in fact charge defendant with the transfer of a drug "designated by the division of health to be a * * * stimulant." If it does not, it charges no offense under § 195.240.

The State contends that the indictment does charge an offense, saying that amphetamine hydrochloride is not a derivative of amphetamine at all, but instead merely contains amphetamine in compound with hydrochloride to make it soluble. Accordingly, says the State, the indictment does charge the distribution and transfer of amphetamine itself and is sufficient since amphetamine is listed both in § 195.220 and in the list filed by the Division of Health. There was no proof offered by the State in this case to support such contention. As a matter of fact, the druggist who filled the prescription and was a witness for the State testified that amphetamine hydrochloride is a derivative of amphetamine. However, this is a fact question and the conviction should be reversed and the case remanded to give the State the opportunity to prove, if it can, that the compound in question is not a derivative of amphetamine but rather a compound or mixture containing the proscribed drug amphetamine itself. State v. Patton, Mo., 308 S.W.2d 641. It also is noted that on the list of drugs filed by the Division of Health appears methamphetamine hydrochloride US P. The testimony of the druggist who appeared for the State seems to indicate that this is a different drug than amphetamine hydrochloride, but if this assumption is incorrect and they are one and the same, the State will have an opportunity to so prove on remand.

■ It is noted that the list of stimulants filed in the office of the Secretary of State

by the Division of Health contains a definition of amphetamine. That definition, as heretofore set out, says that amphetamine includes "any stimulant drug consisting of phenylisopropylamine and all derivatives thereof * * *." Actually, this definition attempts by general formula to include on the list everything (except certain preparations for the nose) consisting of phenylisopropylamine or its derivatives. That is not what the legislature intended. The statute enjoined upon the Division of Health the duty to prepare a *list* of all proscribed drugs, not a general formula or guideline. A definition already has been provided by the legislature in § 195.220. If the formula contained in the definition on the list in the office of the Secretary of State is a mere restatement or duplication of the definition in § 195.220, it adds nothing and to that extent is not a compliance with the statutory duty to prepare and file a list of drugs. If it differs from the definition in § 195.220, it goes beyond what the Division of Health was authorized to do. For a drug which is in fact a derivative of amphetamine to be the basis of a prosecution under § 195.240, it must be listed by the Division of Health on the list which it files in the office of the Secretary of State. This statute applies not only to persons with technical knowledge such as physicians, pharmacists and chemists, but to everyone. Such persons should be able to refer to the list provided for in the statute to determine whether he possesses or is dealing with a proscribed drug. It should make it clear, definite and certain to the average man so that he, with due care, after reading same, will understand whether he is dealing with respect to a proscribed drug. Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922, 924. Accordingly, it is incumbent on the Division of Health to file a proper and complete list of the proscribed drugs and to keep it up to date.

If this case is retried by the State, Instruction No. 1 should be redrafted to include a finding by the jury that the prescription sold by defendant to Pearl Wallace actually was filled and the drug thereby obtained by her. There was evidence that it was, but this fact was not admitted by defendant and Instruction No. 1 did not require such a finding. This element is the very essence of the crime charged and the main instruction should have required the jury to find that essential fact. State v. Griggs, Mo., 236 S.W.2d 588.

The judgment of conviction is reversed and the case is remanded.

All concur.