**STATE of Missouri, Respondent,**

v.

**Donald Ray CARTER, Appellant.**

**No. 54264.**

Supreme Court of Missouri,
Division No. 1.

Jan. 18, 1972.

John C. Danforth, Atty. Gen., James M. Reed, Asst. Atty. Gen., Jefferson City, for respondent.

Clarence E. Godfrey, Clayton, for appellant.

BARDGETT, Judge.

Defendant-appellant, Donald Ray Carter, was charged by indictment with the illegal sale of a stimulant drug, to wit: 200 tablets of dl amphetamine sulfate, under the provisions of § 195.240, RSMo 1969, V.A.M.S. The jury found him guilty and assessed his punishment at nine years' imprisonment. See § 195.270, RSMo 1969, V.A.M.S.[1] The court entered judgment and sentence in accordance with the verdict and, following an unavailing motion for new trial, defendant appeals.

Robert Cutright, a Federal Bureau of Narcotics Agent, testified in the state's case in chief that while working as an undercover agent on April 28, 1967, between 9:15 and 10 p. m., he purchased 200 "pep pills" from defendant at a tavern called "The Place" on Park Avenue in St. Louis, Missouri. Defendant owned and operated this tavern. Cutright stated he had seen defendant at "The Place" earlier on March 16, 1967, and also saw defendant at the time of arrest on May 16, 1967, when Cutright pointed defendant out to the arresting police officer as the man who sold him the pills. The state offered to prove that on the March 16th date Cutright conversed with defendant about defendant furnishing Cutright with "pills" as evidence that de-

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

fendant consistently sold drugs. Defendant's objection on the ground of immateriality and irrelevancy was sustained.

The pills were analyzed and the state's evidence showed them to be dl amphetamine sulfate, "dl" meaning dextro-levo.

The defendant and others testified that defendant was not at "The Place" on the evening of April 28, 1967, at the time Cutright purchased the pep pills; that defendant was at the home of another person selling insurance when the alleged sale to Cutright occurred and that it was dark in "The Place". The defense of alibi was coupled with an effort to depreciate the credibility of Cutright's identification of defendant by showing that it was so dark inside "The Place" that it would be difficult to clearly see another person. Defendant testified that prior to May 16, 1967, the date of his arrest, he had never seen nor talked to Cutright.

A chemist, called as an expert witness by defendant, testified that dl amphetamine sulfate did not appear on the list of proscribed stimulant drugs.

On rebuttal Cutright was recalled by the state and testified that he had seen defendant at "The Place" prior to April 28, 1967. At this point the court indicated it would permit Cutright to testify that he had been in the tavern on the earlier occasion and had a conversation with defendant but would not permit the witness to testify to the substance of the conversation. The state's attorney insisted that he be allowed to put the substance of the conversation in evidence as an admission against interest by the defendant, saying that in behalf of the state he would take the chance of a mistrial. Defendant objected further on the grounds that the evidence constituted an attack on the character of defendant when character was not in issue, and that it was immaterial, irrelevant and prejudicial. The trial court questioned the propriety of permitting agent Cutright to testify to the substance of this alleged conver-sation with defendant but nevertheless overruled defendant's objection.

Cutright then testified that on the evening of March 16, 1967, he first met defendant at "The Place"; that defendant was tending bar; that two other persons were with Cutright; and that Cutright conversed with defendant at the bar. The state's attorney asked Cutright to tell the jury the conversation that took place, to which the witness responded:

"We questioned Mr. Carter concerning whether or not he knew where we could find drugs, specifically, amphetamine. He commented approximately three weeks prior to this date he had quit dealing because he had accepted a job. . . . He commented approximately three weeks prior to our visit on March 16th he had quit dealing. He stated he accepted a job of selling insurance, which necessitated him being away from the tavern most of the time and he did not have time to check out his customers. He commented his wife was the main person attending the bar in his absence and he was afraid to trust her to sell drugs because she might sell to some cop. He further commented he could spot a cop as soon as he walked in the door, but since he had to be away from the tavern so much he quit dealing. He also commented he was selling from ten to fifteen thousand tablets a week while he was in the bar."

This concluded the conversation. Cutright and his two companions remained in the tavern for about an hour and Cutright returned on another date prior to April 28, 1967, but had no conversation with defendant at that time.

One of Cutright's companions testified that he was present at "The Place" on March 16, 1967, and observed defendant and Cutright engaged in conversation.

Defendant contends that agent Cutright's rebuttal testimony of the substance of the conversation of March 16, 1967, introduced into the case evidence that defendant was

guilty of committing crimes other than the offense charged; that it constituted an attack on defendant's character and was so prejudicial that it deprived defendant of a fair and impartial jury trial. The state now seeks to justify the questioned evidence on the basis that it was admitted to establish the identity of defendant as the person who subsequently sold the "pills" to Cutright, citing State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, and State v. Owen, Mo., 457 S.W.2d 799.

At the outset it should be said that the testimony of Cutright, the principal identifying witness, that he had met, conversed with, and was acquainted with defendant at a time prior to April 28, 1967, was admissible as evidence which the jury could consider in assessing the accuracy of Cutright's identification testimony that defendant was the person who sold the pills to Cutright on April 28, 1967. Cf. State v. Rima, Mo., 395 S.W.2d 102, 105. The initial ruling by the court that it would permit Cutright to testify he had been in the tavern and conversed with defendant but would not permit testimony as to the substance of the conversation was correct.

The problem presented in the instant case is that the testimony as to the content of the conversation constituted evidence that defendant had, prior to the date of the conversation (March 16, 1967) sold ten to fifteen thousand amphetamine pills per week and had quit dealing some three weeks prior to March 16. The defendant was being prosecuted for the sale of two hundred amphetamine pills on April 28, 1967, and not for the sale of ten to fifteen thousand per week prior to March 16, 1967. The March 16th conversation did not take place as part of or in connection with the charged sale of April 28, 1967, nor did it constitute any prior or preliminary arrangement for the April 28th sale.

In State v. Reese, 364 Mo. 1221 (Banc) 274 S.W.2d 304, the court considered at length the rule relating to the admissibility of evidence of other crimes and set forth the exceptions to the general rule of inadmissibility. The fifth exception is the one relied on by the state here. It is that, " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish . . . (5) the identity of the person charged with the commission of the crime on trial.' " 274 S.W.2d 307. The court recognized that caution must be exercised with respect to this type of evidence and said, " 'But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt and the evidence should be rejected.' " loc. cit. 307.

This rule was subsequently applied in State v. Reed, Mo., 447 S.W.2d 533, resulting in a reversal of a conviction for the unlawful sale of marihuana. In Reed the defendant was charged with selling marihuana on July 12, 1967, to one James Pollard. Pollard testified as to the July 12, 1967, sale. Then, over objection, Pollard testified he also purchased marihuana from Reed on June 14, 1967. The state argued the evidence of the June 14th sale was admissible "to show a course of conduct and to show that this defendant committed this crime with knowledge and intent and shows there is a motive to make the sale on the occasion for which he was charged, [and it] further shows a positive identification of the defendant." 447 S.W.2d 534.

In State v. Reed, supra, this court followed the rule set forth in State v. Reese, supra, and held that the evidence of the June 14th sale fell within the general exclusionary rule and not within any excep-

tion thereto. There the court said that proof of the separate and distinct sale on June 14 did not tend to prove any material fact in issue concerning the sale of July 12. Here proof of the sales of pills prior to March 16 docs not tend to prove that defendant sold the pills to Cutright on April 28. There, the court said, that proof of the sale on June 14 was not relevant to prove the identity of the defendant, citing State v. Reese, supra. Here, proof of the sales prior to March 16 was not relevant to prove the identity of defendant with respect to the April 28 sale with which he was charged.

State v. Reed, supra, and the instant case are markedly similar. The issue with respect to whether the defendant was the person who committed the act charged is, except where admitted, an issue in every criminal case. The existence of this issue does not, in and of itself, authorize evidence of other crimes. The fact that here defendant testified and denied the April 28th sale and also denied he had met or known agent Cutright prior to defendant's arrest on May 16, 1967, did not open the floodgates to evidence that on prior occasions defendant illegally sold amphetamines, under the guise of bolstering the agent's identification testimony of defendant.

 We believe that in the circumstances of this case the evidence of sales of ten to fifteen thousand pills per week prior to March 16, 1967, was calculated to produce that which State v. Reese, supra, condemned, in that "the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." State v. Reese, 274 S.W.2d at 307. The admission of this evidence over objection was prejudicial error.

Because this case is being remanded for new trial, we must consider an additional point involving instructions raised by defendant. Defendant offered two instructions, A and C, which submitted to the jury the question of whether or not dl am-

phetamine sulfate appeared on the list of proscribed drugs filed by the Missouri Department of Health with the Secretary of State. Such a list is authorized by § 195.220 to § 195.270.

Defendant claims he had the right to have the jury decide whether or not dl amphetamine sulfate appears on the list of proscribed stimulant drugs and to require the jury to decide this question by utilizing a test set forth in defendant's refused instructions A and C and denominated by defendant as the "average man" test. Instructions A and C (which are essentially the same and shall be referred to in the singular) set this test forth as follows: "The test to be used is whether the list is clear, definite and certain to an average man, with due care, after reading same so that he will be able to understand whether, in respect to dl-Amphetamine Sulfate, he is dealing with a proscribed drug on the aforenamed list, and after using this test you have reasonable doubt concerning whether dl-Amphetamine Sulfate is on the aforenamed list, you must acquit the defendant."

The evidentiary base upon which defendant premises this claim is the testimony of defendant's chemist that dl amphetamine sulfate was not on the list of proscribed stimulant drugs and testimony given by one of the state's expert witnesses (chemist) that the list would be confusing to a layman. Defendant principally relied on State v. Bridges, Mo., 398 S.W.2d 1, as the legal authority in support of his contention.

In the very recent case of State v. Crump, Mo., 454 S.W.2d 519, the principal question presented was whether or not dl amphetamine sulfate was on the list of proscribed drugs. The list involved in the instant case was filed with the Secretary of State on May 2, 1966, and is the same list that was involved in State v. Crump, supra. We held in Crump that dl amphetamine sulfate was listed and that an average person would understand from the list that dl amphetamine sulfate is a proscribed stimulant drug.

Defendant sought in oral argument before this court to distinguish State v. Crump, supra, from the case at bar contending that State v. Bridges, supra, holds that the question of whether or not the list of proscribed drugs is sufficiently clear, definite and certain so that an average man would understand that dl amphetamine sulfate is a proscribed stimulant drug is to be determined by the jury. Bridges does not so hold. The rule or test referred to in Bridges is for the *court* to utilize when called upon to determine if a law or ordinance is invalid for vagueness.

In inverse order, the instruction defendant offered would submit the questions of whether or not the list of stimulant drugs is clear, definite and certain to an average man and whether, using the "average man" test with reference to the list, dl amphetamine sulfate is listed as a proscribed stimulant drug.

In so doing it would permit the jury to decide whether the list is so vague and indefinite as to violate the due process clause of Art. I, § 10, Mo.Const.1945, V.A.M.S., and thereby is invalid, and would permit the jury to interpret the list to determine whether or not dl amphetamine sulfate is a proscribed stimulant drug. The list of stimulant drugs, when prepared pursuant to § 195.230, and filed with the Secretary of State, supplements and, in effect, becomes part of §§ 195.220 through 195.270.

■ It is, of course, essential to the validity of statutes and ordinances which fix crimes or quasi-crimes that they be so worded that one could read them and know whether or not he was violating the law. Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922. This same criteria applies to a list of proscribed drugs prepared by the Division of Health and filed with the Secretary of State pursuant to §§ 195.220 to 195.270. State v. Bridges, supra.

The Illinois Supreme Court in People v. Bruner, 343 Ill. 146, 175 N.E. 400, had to pass on the validity of a statute which provided that "juries in all criminal cases shall be judges of the law and the fact." loc. cit. 401. This is essentially the power which the defendant argues that juries should have under the "average man" test he advocates. The court in Bruner held that the statute was unconstitutional, it being the constitutional duty of the jury to pass only on questions of fact and the duty of the judge to pass on questions of law. The court based its decision on the common-law roles of judge and jury and reasoned that to allow the jury to declare the law would result in confusion and uncertainty in the criminal law for the law would become whatever the jury declared it to be despite reason, logic or constitutional mandate. See also Ex parte Taft, 284 Mo. 531, 225 S.W. 457.

■ The question of whether a statute is invalid for vagueness is a question of law for the court, not the jury, to decide. The interpretation of a statute is also the function of the court, not the jury.

■ Therefore, in the instant case the questions of whether or not the list of proscribed stimulant drugs was sufficiently clear and definite and whether dl amphetamine sulfate appears on the list of proscribed stimulant drugs and is, therefore, proscribed are questions of law and must properly be left to the court, not the jury, to decide. People v. Bruner, supra; Ex parte Taft, supra.

It was the function of the jury to decide, inter alia, as a matter of fact, whether or not the substance defendant was charged with selling was dl amphetamine sulfate. However, it was not the jury's function to determine if dl amphetamine sulfate was a proscribed drug, just as it was not the function of the jury in State v. Thompson, Mo., 425 S.W.2d 80, to determine whether marihuana was or was not a narcotic drug. The court was correct in refusing to give instructions A and C.

Defendant assigns error to the state's closing argument asserting that the state

compared defendant with Al Capone and also inferred that defendant sold drugs to children in school yards. We do not anticipate this kind of argument will recur on retrial and, therefore, in view of the result reached, we need not rule these matters.

The judgment is reversed and the cause remanded.

All of the Judges concur.