STATE of Missouri, Respondent,

v.

Loren WINTERS, Appellant.

No. KCD 26801.

Missouri Court of Appeals, Kansas City District.

March 31, 1975.

Motion for Rehearing and/or Transfer Denied May 6, 1975.

Howard L. McFadden, Circuit Public Defender, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment and sentence to eight years' imprisonment, imposed under Second Offender Act, upon jury verdict, finding Loren Winters guilty of selling amphetamine, a controlled substance.

On November 14, 1972, an undercover agent of the Jefferson City Police Department told other officers that he had arrangements to make a purchase of "speed." The undercover agent and other officers met at a Jefferson City motel, where the agent was "strip searched," his money taken from him and he was given a $20 bill. A radio transmitter was taped to the agent's back.

The agent drove downtown where he parked and entered a bar. Police officers followed him in an unmarked car and parked across the street.

The agent sat at a table in the bar with appellant Loren Winters, whom he had known previously, Donna Hunt and a fourth person. Winters asked the agent if he "still wanted some." The agent said "Yes," and suggested they take a ride. The agent, Winters and Miss Hunt went to the agent's auto. He and Winters got in the front seat and Miss Hunt in the rear. The agent drove around the block three times, with the unmarked police car following.

Winters removed a plastic container with about 40 red "pills" in it and asked the agent how much he wanted. The agent said, "About $10 worth." Winters said they were $1.50 apiece so the agent asked for six, and gave Winters a five and four one dollar bills. After the sale had been completed, Winters and Miss Hunt were let out of the auto in front of the bar. The agent advised the other officers that "Everything was completed."

The agent and other officers returned to the motel. There the agent was again "strip searched." The capsules which he had purchased were taken to the police station where a "Nartec" field test showed the capsules had an amphetamine content. The capsules were turned over to a chemist at the Missouri State Highway Patrol Technical Laboratory for examination.

Winters was charged with illegal sale of a controlled substance: six capsules of amphetamine. §§ 195.020, 195.017, RSMo Supp.1973, V.A.M.S. The agent, one of the police officers and the highway patrol chemist testified at the trial. Appellant testified and denied that he made the sale. Miss Hunt testified on behalf of appellant that no sale was made while she was in the auto. After the trial court found that appellant was subject to the Second Offender Act, the jury found him guilty as charged and the court fixed his punishment at eight years' imprisonment under § 195.200, subd. 1(4), RSMo Supp.1973, V.A.M.S.

On this appeal the first contention of appellant is that he was sentenced under an inappropriate section of the statutes. This contention is based on the proposition that by § 195.017, subd. 6(2)(a), RSMo, supra, amphetamine is a Schedule III controlled substance, and that its illegal sale, in violation of § 195.240 is punishable, under § 195.270, by a term of from two to ten

years in the penitentiary, a jail term of not more than one year, a fine of not more than $1,000, or both the jail term and fine. § 195.200, subd. 1(4), under which the court sentenced appellant, fixes the punishment at from five years to life imprisonment.

The state offered in evidence "Missouri Controlled Substances Regulations," promulgated by the Division of Health, dated October 4, 1972, which classified amphetamine as a Schedule II controlled substance. Appellant argues that § 195.017, subd. 6(2)(a), classifies amphetamine as a Schedule III controlled substance and that the Division of Health had no authority to classify amphetamine under a schedule different than that prescribed by the legislature. Appellant relies on the language of § 195.015, subd. 1, authorizing the Division of Health to "add" substances to the schedules and argues that this authority applies to newly discovered substances. Appellant argues that no authority is granted to "subtract" a substance from an existing schedule.

This argument ignores subparagraph 4 of § 195.015, which provides:

"If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the division of health, the division of health shall similarly control the substance under sections 195.010 to 195.-320 after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that thirty day period, the division of health objects to inclusion, rescheduling, or deletion. In that case, the division of health shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the division of health shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclu-

sion, rescheduling or deletion under sections 195.010 to 195.320 by the division of health, control under sections 195.010 to 195.320 is stayed until the division of health publishes its decision."

■ Effective July 7, 1971, the Federal Director of the Bureau of Narcotics and Dangerous Drugs, under the authority of 21 U.S.C. § 811, rescheduled amphetamine from Schedule III to Schedule II of the Federal Drug Abuse Act. 36 F.R. 12735 (1971). This action authorized the Missouri Division of Health to act under § 195.015, subd. 4, supra. Appellant does not attack the validity of the grant of authority to the Division of Health. This assignment of error is without merit.

Appellant has assigned error based upon the admission into and use in evidence of the regulations of the Division of Health placing amphetamine under Schedule II. He contends that the rules were not properly identified and authenticated. The exhibit consists of 26 pages of regulations to which is affixed the certificate of the Secretary of State "that the annexed pages contain a full, true and complete copy of MISSOURI CONTROLLED SUBSTANCES REGULATIONS FILED IN THIS OFFICE BY THE DIVISION OF HEALTH OF THE DEPARTMENT OF PUBLIC HEALTH AND WELFARE ON OCTOBER 4, 1972 AND WHOLLY IN EFFECT UNTIL THE UNDERSIGNED DATE WITHOUT CHANGE, ADDITION OR DELETION * * *." The certificate is dated March 1, 1973.

■ This certificate, under the seal of the Secretary of State, was sufficient to make the document admissible in evidence under § 490.180, RSMo 1969, V.A.M.S. Appellant's contention that the document was required to bear the seal of the Division of Health mistakes the requirement of § 490.180. The requirement is that the seal of the officer receiving the document for filing appear on the certification, not the seal of the agency which promulgated the

document. § 536.020, RSMo 1969, V.A.M. S., required the filing of this regulation in the office of the Secretary of State and his certificate adequately authenticated the document offered in evidence.

Appellant objects to the trial court's permitting the prosecuting attorney to read from the exhibit on the grounds that it amounted to an instruction to the jury that the substance in question was in fact proscribed by the rules. The prosecutor did, over appellant's objection on this ground, read to the jury the language of the regulation including amphetamine under Schedule II. However, appellant's contention that the court was required to submit to the jury the question of whether or not amphetamine was under Schedule II is based on a misreading of State v. Carter, 475 S.W.2d 85 (Mo.1972), which he cites. In that case the court stated (475 S.W.2d 90[5]):

"Therefore, in the instant case the questions of whether or not the list of proscribed stimulant drugs was sufficiently clear and definite and whether dl amphetamine sulfate appears on the list of proscribed stimulant drugs and is, therefore, proscribed are questions of law and must properly be left to the court, not the jury, to decide. People v. Bruner, [343 Ill. 146, 175 N.E. 400] supra; Ex parte Taft, [284 Mo. 531, 225 S.W. 457] supra.

"It was the function of the jury to decide, inter alia, as a matter of fact, whether or not the substance defendant was charged with selling was dl amphetamine sulfate. However, it was not the jury's function to determine if dl amphetamine sulfate was a proscribed drug, just as it was not the function of the jury in State v. Thompson, Mo., 425 S.W.2d 80, to determine whether marihuana was or was not a narcotic drug."

■ That case is contrary to appellant's position here. He has shown no error in the trial court's ruling on this matter. A further contention, based on similar grounds, of error in permitting testimony that the capsules contained a "controlled substance" is, for the same reason, without merit.

■ Appellant also claims that Exhibit 5 included a great deal of extraneous, inadmissible and highly prejudicial matter. Such an objection was made in the trial, but neither then nor here has appellant made any effort to point out what portion of the exhibit he considers objectionable. Failure to do so precludes any finding of error on the part of the trial court.

Appellant contends that the certified copy of the record of his prior conviction, relied upon in the court's finding that he was subject to the Second Offender Act, was inadequate because its authenticity was not properly established. The state produced a certified copy of a judgment of the Cooper County Circuit Court entered April 22, 1968, in the case of State of Missouri v. Loren De Wayne Winters, finding the defendant guilty, on a plea of guilty, of burglary and stealing, and sentencing him to two years' imprisonment on each charge, the sentences to run concurrently. Appellant states that the procedure for authentication under § 490.130, RSMo 1969, V.A. M.S., has not been met, but he in no way points out in what respect the requirements of that section were not met.

■ The copy was produced by the Chief Records and Identification Officer for the Department of Corrections. Regardless of who produced the document, it was properly authenticated, in accordance with § 490.130, RSMo 1969, V.A.M.S., and was for that reason admissible. Appellant's argument based upon "The Uniform Business Records as Evidence Law" (§§ 490.660–490.690, RSMo 1969, V.A.M.S.) is irrelevant since the admissibility of a duly authenticated judgment is not dependent upon its status as a business record. State v. Washington, 335 S.W.2d 23, 25[7–9] (Mo.1960).

On the day that the case was set for trial, the state asked leave to endorse as a witness the name of the second police officer who had been present at the motel and was in the police car, as above related. The trial court permitted defense counsel to interview the prospective witness during a 45-minute recess. After the recess, counsel objected to the endorsement and also asked for a continuance. The ground of this request was that counsel learned that the officer had made a written transcript of the conversation which he overheard via the transmitter strapped to the back of the agent. Counsel asked for a continuance so that he might subpoena the written record of this conversation to determine whether in fact it existed, to determine whether an unlawful search and seizure was involved, to determine whether the record contained exculpatory material and to determine whether it contained evidence of entrapment. The court overruled the motion for continuance, but refused to permit endorsement of the witness. The refusal of a continuance is assigned as error.

■ Granting or refusing a continuance in a criminal case is a matter entrusted to the trial court's discretion. Absent clear abuse of such discretion, the refusal of a continuance is not reversible error on appeal. State v. Thomas, 433 S.W.2d 537, 539[1–3] (Mo.1968); State v. Reece, 505 S.W.2d 50, 52[2–6] (Mo.1974); State v. Tschirner, 504 S.W.2d 302, 307[10–12] (Mo.App.1973). In this case, the request had a speculative basis. With or without a continuance, counsel had means to obtain the report if it existed but insofar as the record discloses took no steps to do so, leaving the question of what it might have disclosed purely in the realm of speculation. No abuse of discretion on the part of the trial court has been demonstrated.

In his statement prior to examination of the jury panel, the prosecutor explained that the defendant was "charged with the sale of a controlled substance. This is what the statute calls it. You and I know it by other names, perhaps drugs, narcotics. * * *" No objection to the remark was made, but on this appeal appellant contends that the use of the term "narcotics" was so calculated to inflame the minds of the jurors that it requires reversal of the conviction as plain error under Rule 27.20(c), V. A.M.R.

■ Objection at the time of the alleged error is the fundamental basis for appellate review of alleged trial errors. No objection was made here. That precludes consideration of the question according to the general rules. Relief on the grounds of plain error is available only in the exceptional situation when the reviewing court is convinced that manifest injustice or a miscarriage of justice has resulted. The single use of the word "narcotics" at the preliminary stages of the trial is far different from the repeated inflammatory remarks of the prosecutor in his closing argument, held reversible plain error in State v. Heinrich, 492 S.W.2d 109, 113[7] (Mo.App.1973), cited and relied upon by appellant. The remark now objected to would not have been of such import as to affect appellant's substantive rights. State v. Agee, 474 S.W.2d 817, 820[9, 10] (Mo. 1971). No reversible error has been shown in this regard.

■ Appellant charges that there was a fatal variance between the pleading and proof, with respect to the substance alleged to have been sold. The information charged the illegal sale of "six capsules of amphetamine." The police officer testified that a Nartec field test of the capsules showed they had an amphetamine content. The highway patrol chemist testified that the Marquis test of the substance was positive for amphetamine. When asked what particular amphetamine it is, he responded: "Well, * * * at this stage it is an amphetamine derivative. It could be any of the optical isomers of the amphetamine." He said it could be called "racemic amphetamine sulfate." When asked by the

prosecuting attorney whether the substance fit within the classification of "amphetamine, its salts, optical isomers and salts of its optical isomers," the chemist replied: "The capsules contained a salt of an optical isomer."

This testimony was sufficient to permit a finding that the substance sold was amphetamine as listed among the controlled substances of Schedule II of the drug control law. The schedule includes:

"Amphetamine, its salts, optical isomers, and salts of its optical isomers; * * *."

Contrary to the situation in State v. Bridges, 398 S.W.2d 1 (Mo.1965), the evidence here did show that the capsules contained amphetamine within the terms of the schedule.

■■■ Appellant next contends that the trial court erred in not sustaining his motion for a directed verdict at the close of the state's case for the reason that the state's evidence was contradictory. The defendant offered evidence in his own behalf. That waived any error based on the overruling of his motion at the close of the state's case. State v. Spraggins, 368 S.W. 2d 407, 408[1] (Mo.1963); State v. Turnbough, 497 S.W.2d 856, 858[1] (Mo.App. 1973).

Appellant asserts that the trial court erroneously limited his cross-examination of the police agent. Defense counsel inquired of the witness about his employment by the Jefferson City Police Department. The witness acknowledged that prior to that employment he had been convicted for "hit and run driving." He was then asked: "Were you guilty of another hit and run accident in December of 1972?" Objection to the form of question was sustained. Defense counsel continued by inquiring about the age of Donna Hunt. The witness said she was 17 or 18 years of age. Counsel asked whether the witness had told the police at the time of his employment he was living with her. An objection was sustained. Counsel then asked the witness

whether he lived with Miss Hunt while he was employed by the police department. He replied that she was staying in his trailer. The witness was then asked whether he was also living with another girl. Objection to the question was sustained. The witness was then asked whether he knew the girl. He said he did, that she was 15 years old. He was then asked: "Were you having sexual intercourse with her at your trailer?" Objection to the question was sustained. Defense counsel then returned to the police investigation of the witness upon his employment. Objection was sustained to an inquiry as to whether or not the witness had dealt in narcotics before his employment by the police. In support of such inquiry, defense counsel stated:

"My objective is to establish that he witnessed—has committed so many major crimes that are known to the police department; that he is motivated to lie and commit perjury in order to avoid prosecution by the police department. And I seek to establish that this is not—he is not on the police department and that—well, that is the objective. His credibility is affected not necessarily because he has been convicted of hit and run driving, but they are holding this over his head."

The court stated that counsel could ask the witness whether he was offered leniency or nonprosecution but that counsel was going at the matter the wrong way.

Counsel then asked the witness whether he had been charged by the police department with any offense arising out of the acts of misconduct he had been asked about. The witness replied negatively. After objection by the prosecutor, the trial court asked counsel to be more specific. Counsel asked whether or not the witness had been charged with leaving the scene of an accident for an incident which occurred on December 12, 1972. The witness responded: "No, I haven't." He was then asked:

"And you haven't been charged with the felony of contributing to the delinquency of a minor for living with Donna Hunt in your trailer, have you?"

Objection by the prosecutor was sustained. Defense counsel then asked:

"And you haven't been charged with the felony of statutory rape in connection with your association with * * *, have you?"

Again, objection of the prosecutor was sustained. The trial court told defense counsel that the form of question was improper for impeachment. Defense counsel then dropped the line of inquiry.

Essentially, appellant's objection here is that the trial court prevented his showing circumstantially the motive for the police agent's testimony, i.e., that he was seeking to avoid prosecution for his own offenses and was coerced by the police in his testimony.

■ A witness is, of course, subject to impeachment by a showing of a motive for the witness's testimony which might bear on his credibility. An interest in avoiding prosecution for his own misdeeds may be shown and becomes significant particularly when the testimony is the result of an arrangement for nonprosecution of the witness. This problem arises primarily in cases where the witness is an accomplice, but is not necessarily limited to those situations. See Alford v. United States, 282 U.S. 687, 693, 51 S.Ct. 77, 75 L.Ed. 736 (1931). Nor is proof of such an arrangement necessarily limited to proof of an express promise of nonprosecution in return for cooperation with the prosecution. See State v. Roberson, 215 N.C. 784, 3 S.E.2d 277, 280[6] (1939).

■ Appellant now asserts that the entire series of questioning outlined above was an effort to show circumstantially the motive of the witness to avoid prosecution for his own offenses. His first inquiries relative to the second hit and run incident

and having sexual intercourse with a 15-year-old girl on their face were inquiries designed to impeach on the basis of specific criminal acts. The law is well-established that cross-examination in that regard is a matter for the trial court's discretion. State v. Miller, 22 S.W.2d 642, 643–644[3] (Mo.1929). State v. Messley, 366 S.W.2d 390, 393[2–6] (Mo.1963), cited and relied upon by appellant, recognizes the discretion accorded the trial court in such matters. The court not having been advised at the time that it ruled on objections to these questions that the inquiries were intended otherwise than they appear on their face, no error was committed in the trial court's rulings on these questions.

■ These questions having been unanswered, there was no basis for subsequent questioning premised on the theory that the witness might have been subject to criminal prosecution regarding those matters. The Hunt girl having been 17 or 18 years of age, according to the evidence, the question as to her improperly assumed that cohabitation with her might have given rise to a charge of contributing to the delinquency of a minor. See § 559.360, RSMo 1969, V.A.M.S.

There simply was no evidentiary support for the inquiry regarding the claimed statutory rape. No effort was made to pursue the claim of dealing in drugs.

Appellant did receive the benefit of the witness's admission regarding the alleged 1972 hit and run incident, and argued to the jury on the basis of that admission that the witness's testimony was unworthy of belief.

Considering all of the circumstances, the rulings of the trial court on this issue were not erroneous.

Appellant's next point relates to the admission into evidence of six capsules which the state claimed were the items sold by appellant. He objects that the witnesses were unable to state positively that the

capsules were those received from appellant, that the capsules were not shown to have been in the same condition as when they were first obtained, and "* * * most fatal to the State's cause is the fact that the chain of possession * * * was completely broken while in the hands of the Missouri State Highway Patrol * * *."

The state's evidence showed that when the agent and the police officers returned to the motel, the police officers took the six capsules from the agent. They were placed in a paper container and all three of the men initialled the paper and noted the date and time of the delivery. Putnam took the material to the police station where it was examined by Officer Miller. The capsules were returned to the paper container and the container placed in a sealed cellophane evidence bag. The bag was put in the police evidence locker. The next morning, Officer Putnam delivered the bag to the Highway Patrol laboratory.

The Highway Patrol chemist testified that he received from Officer Putnam at 9:01 A.M., November 15, 1972, a sealed cellophane bag which contained a sealed paper packet containing six capsules partially filled with a white powder. An identification number was placed on the container and it was put in the evidence locker at the patrol laboratory where it remained until January 9, 1973, when analysis of the contents of the capsules was made. After the analysis had been completed, the chemist returned the capsules to the paper container and again placed the paper container in the cellophane bag which he sealed. The sealed container was returned to Officer Putnam on January 11, 1973. The container and its contents were shown to the agent at the trial on April 13, 1973, and identified by him on the basis of his initials on the paper container. He did state that he could not at that time positively identify the capsules as those which he received from appellant.

What appellant says is "fatal to the state's cause" is an alleged break in the chain of possession of the evidence after it was placed in the highway patrol evidence locker. Appellant asserts that the chemist testified that some ten other laboratory personnel had access to the locker and, inferentially, that the possibility of their tampering with the exhibit was not excluded by the state's evidence.

The state's evidence here was sufficient to meet the requirement for proof of a chain of possession adequate "to vouchsafe assurance that the exhibit has not been altered or tampered with and that there has been no substitution." State v. Lemon, 504 S.W.2d 676, 684[15, 16] (Mo. App.1973). There is no requirement that the article be watched continually. State v. Day, 506 S.W.2d 497, 502 (Mo.App. 1974). The fact that other laboratory employees had access to the highway patrol laboratory locker does not destroy the adequacy of the chain of custody. State v. McCrary, 478 S.W.2d 349, 350 (Mo.1972). The adequate chain of custody was sufficient to support the identification of the capsules produced at the trial as those delivered by appellant, even though the capsules themselves had not been marked and the witnesses relied upon the marks on the container in identifying the capsules. The trial court did not err in admitting the evidence. State v. Baines, 394 S.W.2d 312, 316[6, 7] (Mo.1965).

Complaint that the verdict-directing instruction was erroneous because it required a finding that the appellant sold six capsules of amphetamine when the evidence failed to show that the contents of the capsules was amphetamine is adequately answered previously in concluding that the evidence did show the sale of amphetamine. Objection that the instruction told the jury that amphetamine was a controlled substance rather than requiring the jury to find as a matter of fact that it was likewise answered by the previous discussion of the objection to testimony of the chemist that amphetamine is a controlled substance. The fact question for the jury is what substance was sold. Whether or

not the substance is a "controlled substance" is a matter of law. State v. Carter, supra; State v. Thompson, 425 S.W.2d 80, 84[6] (Mo.1968).

Finally, appellant contends that the trial court erred in overruling his objection to the prosecuting attorney's argument in summation regarding the problems encountered in dealing with the "drug culture." Appellant objects here that there was no evidence linking appellant with the "drug culture." Reading the argument as a whole, it is clear that this reference was a part of the prosecutor's explanation or apology for the caliber of witnesses which the state must rely upon in drug cases. He did not make any argument for the appellant's guilt because he was involved in the "drug culture." In these circumstances, the ruling of the trial court was not error.

Judgment affirmed.

All concur.