STATE of Missouri, Plaintiff-Respondent,

v.

**Dennis William BURR, Defendant-Appellant.**

No. 9712.

Missouri Court of Appeals, Springfield District.

Oct. 6, 1976.

528

Kenneth W. Johnson, Johnson & Sweeney, Springfield, for defendant-appellant.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before HOGAN, P. J., FLANIGAN, J., and CAMPBELL and PYLE, Special Judges.

BEN F. PYLE, Special Judge.

Appellant, Dennis William Burr, hereinafter referred to as defendant, was charged with selling a controlled substance (marihuana) under the Habitual Criminal Act in an information substituted for an indictment. The jury found defendant guilty and the court sentenced him under the Habitual Criminal Act to five years' imprisonment in the Missouri Department of Corrections.

D. W. Lipp, an undercover narcotics agent for the Missouri Highway Patrol, testified that while working undercover in Springfield, Missouri, on January 11, 1973, he first met and became acquainted with the defendant at the Quest Lounge in Springfield. They struck up a general conversation which ultimately got around to the subject of drugs. The defendant who had introduced himself as Dennis asked Lipp if he was interested in anything. Lipp indicated he was and inquired of defendant what he had access to. Defendant replied, "Anything you want." When asked by Lipp if he could obtain any chemicals, the defendant stated he could, however it would take a couple of days. Defendant then advised Lipp that he knew where he could get some marihuana. Lipp and the defendant then went their separate ways. The first meeting lasted about fifteen to twenty minutes.

Later that same evening, Agent Lipp again saw the defendant at the Esquire Lounge in Springfield. Defendant approached Lipp and told him he could get some marihuana but it would take a few days. Defendant gave Lipp a phone number and told him to call him in a couple of days and to ask for Dennis Burr or "Peanuts".

Agent Lipp was then allowed to testify, over the objection of the defendant, that he then inquired of the defendant if he had anything with him at that time. Defendant stated that he had some "speed" and quoted a price of thirty cents a tablet. They retired to the restroom of the Esquire Lounge where Lipp testified he purchased ten tablets from the defendant for three dollars. Lipp placed the tablets in his coat pocket and they again went their separate ways. Later that evening Lipp noticed his jacket, along with the pills, was missing. No claim was made that the defendant was involved in the loss of the jacket and its contents. This second meeting that night at the Esquire Lounge lasted about ten minutes.

Agent Lipp then testified that sometime between January 11 and January 26 he placed a phone call to the defendant at the number given him and asked for either Dennis or Peanuts. Lipp stated that he talked to someone whom he could not identify. They talked about fifteen to thirty seconds and Lipp told him he would contact him the next time he (Lipp) was in town.

On January 26 Lipp again saw the defendant in the Esquire Lounge. They spoke and Lipp asked him if he had any marihuana. Defendant indicated that he did and it was fifteen dollars a lid. He and Lipp went out to the parking lot where the defendant gave Lipp two plastic bags containing marihuana. Lipp in return gave him thirty dollars. This contact lasted about ten minutes. This sale was the basis for the present charge against the defendant.

Agent Lipp made positive identification of the defendant as the man whom he had met on January 11 and who had sold him the marihuana on the 26th. He further stated that, in all, he had seen the defendant for a total of about forty minutes. The defendant testified that he had never seen or talked to Agent Lipp before his arrest and did not sell him any marihuana on January 26, 1973. Defendant in addition introduced other evidence tending to discredit Lipp's identification testimony.

The defendant lists nine separate allegations of error which, because of their similarity, he has grouped under three points in his brief.

Basically, the defendant's main contention under the first point is that the trial court erred in allowing the State, over defendant's objection, to introduce evidence of

the alleged prior sale of "speed" by the defendant to Agent Lipp on January 11. This the defendant claims constituted evidence of another crime which is inadmissible and prejudicial. The State contends that because of the evidence introduced by the defendant tending to discredit Lipp's identification testimony and because the identity of the defendant was the main issue, such evidence of the prior sale of pills was proper in order to substantiate Lipp's identification of the defendant.

█ It is well-settled that proof of the commission of a separate and distinct crime by the defendant is not admissible, unless such proof has a legitimate tendency to establish defendant's guilt of the charge for which he is on trial. *State v. Selle,* 367 S.W.2d 522, 529[18] (Mo.1963); *State v. Shilkett,* 356 Mo. 1081, 1086, 204 S.W.2d 920, 922–923[1, 2] (1947). Generally, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: 1) motive; 2) intent; 3) the absence of mistake or accident; 4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; 5) the identity of the person charged with the commission of the crime on trial. *State v. Reed,* 447 S.W.2d 533, 534[1] (Mo.1969).

█ The test of whether evidence of other distinct crimes falls within any of these exceptions was aptly stated in *State v. Reed,* supra, 447 S.W.2d at 534[1]:

" 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime.' *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307."

The cases of *State v. Reed,* supra, and *State v. Carter,* 475 S.W.2d 85 (Mo.1972), neither of which was cited by the defendant, are markedly similar and appear to be controlling of the issue involved here. In the *Reed* case, the defendant was charged with the unlawful sale of marihuana to James Pollard, a police informer, on July 12, 1967. Pollard testified that an agent supplied him with money, he went to the defendant's apartment and purchased a bag of marihuana from him. Pollard was further allowed to testify, over the objection of the defendant, that a month earlier, on June 14, 1967, he had gone to the defendant's apartment and purchased two ten-dollar bags of marihuana from him. The State argued that the evidence of the prior sale was admissible on various grounds, and further it showed positive identification of the defendant. The Supreme Court of Missouri, in reversing the conviction, said, 447 S.W.2d at 534[2]:

"We can find no justifiable reason for the admission in evidence of the separate and distinct sale of marijuana by defendant to James Pollard on June 14, 1967. . . . Proof of the separate and distinct sale on June 14 did not tend to prove any material fact in issue concerning the sale on July 12th. It was not relevant to prove the identity of defendant."

Likewise, the case of *State v. Carter,* supra, 475 S.W.2d 85, is on all fours with the issues in this case. There the defendant was charged and convicted of the offense of *unlawfully selling a controlled substance on April 28, 1967.* Robert Cutright, a narcotics agent, testified that he purchased two hundred "pep pills" from the defendant at a tavern called "The Place" on April 28. The defendant testified that he had never seen or talked to Cutright prior to his arrest on May 16, and was not at "The Place" on that date but was, in fact, somewhere else. This alibi testimony was coupled with other evidence in an effort to cast doubt on the credibility of Cutright's identification. In rebuttal, the State recalled Cutright who was allowed to testify, over defendant's objection, that he had previously seen the defendant on March 16 at "The Place" and had had a conversation with him, wherein defendant stated that he had previously dealt in drugs and had sold ten to fifteen

thousand pills per week but had quit dealing some three weeks prior to March 16. The State sought, as here, to justify the admission of this conversation on the basis that it helped establish the identity of the defendant as the person who later sold the "pep pills" to Agent Cutright. Our Supreme Court reversed the conviction, holding that the proof of the sale of pills prior to March 16 did not tend to prove that defendant sold the pills to Cutright on April 28, and was not relevant to prove the identity of the defendant with respect to the charged sale of April 28. The court stated, 475 S.W.2d at 89:

> "The issue with respect to whether the defendant was the person who committed the act charged is, except where admitted, an issue in every criminal case. The existence of this issue does not, in and of itself, authorize evidence of other crimes. The fact that here defendant testified and denied the April 28th sale and also denied he had met or known agent Cutright prior to defendant's arrest on May 16, 1967, did not open the floodgates to evidence that on prior occasions defendant illegally sold amphetamines, under the guise of bolstering the agent's identification testimony of defendant."

■ We can perceive no practical distinction between the fact situation in the *Carter* case and this case. The testimony of Agent Lipp that he had met the defendant on January 11 and conversed with him on two occasions that evening about a possible future sale of drugs was certainly admissible to show preliminary arrangement between them for the sale on January 26, and to further show the opportunity Lipp had to observe the defendant, thus strengthening his identification testimony. Does the further evidence of the alleged sale of "speed" on the 11th tend to prove the defendant sold the marihuana on the 26th? Does it bolster the identification testimony? The court thinks not.

■ When admitting evidence of other crimes, it is important that the trial court consider not only the rule of exclusion but also the matter of discretion. Some courts proceed on the assumption that the decision of admitting or not admitting such evidence turns solely upon the ascertainment and application of the rule, in other words, whether or not the evidence comes within a certain category which constitutes an exception to the rule of exclusion. This should not, however, be a matter of pigeonholing, but one of balancing, on the one hand the actual need for such evidence, and on the other the degree to which a jury may be prejudiced against the defendant by hearing such evidence. The matter should be one of careful discretion on the part of the trial court. This is especially true when the ultimate purpose of the State is to prove the identity of an accused.

Even assuming that such evidence in some small way strengthens Agent Lipp's identification testimony, does its probative value in this respect outweigh the inference of guilt which it would obviously create in the minds of the jurors? The court in *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954), recognized that caution must be exercised with respect to this type of evidence and said, 364 Mo. at 1227, 274 S.W.2d at 307:

> "But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected."

■ The court holds that the testimony of Agent Lipp concerning the sale of pills on January 11 does not clearly tend to prove any material fact in issue and is not relevant to the identity of the defendant as the one who sold Lipp the marihuana on the

26th. Its admission, over defendant's objection, was prejudicial error, and this case is therefore reversed and remanded for new trial.

Even though this case is being remanded for a new trial, the court will briefly consider the remaining allegations of error.

Defendant contends under point one that the trial court erred in giving MAI–CR No. 3.60 (Instruction 10). This instruction was given by the court to advise the jury that if they found the defendant was involved in an offense other than the one for which he was on trial (in this case, the alleged sale of pills on January 11), that they were to consider that evidence only on the issue of identification of the defendant and for no other purpose. Because of the above ruling of this court, we need not rule on this allegation of error since on retrial the giving of this instruction will not be necessary.

■ Under the second point of error the defendant claims that the identification testimony of Agent Lipp was totally insufficient to support the verdict. In this case the essential fact issue was identification, and Lipp's identification of the defendant as the person who sold him the marihuana was positive. Even though the defendant presented evidence which tended to discredit Lipp's testimony and identification, it is for the jury to weigh the evidence and determine the credibility of the witnesses. The testimony of a single witness, if deemed credible by the jury, may be considered sufficient for conviction, although that testimony may be uncertain or inconsistent. *State v. Platt,* 496 S.W.2d 878, 881[2] (Mo.App.1973).

It is a well-established principle of judicial review that appellate courts must consider the evidence and inferences most favorable to the verdict and disregard any evidence and inferences to the contrary. *State v. Knighton,* 518 S.W.2d 674, 675[1] (Mo.App.1975). This court is of the opinion that the identification testimony of Agent Lipp together with all other evidence was sufficient to support the jury's verdict of guilty.

The defendant's third and last contention is that the trial court erred in permitting the State, over his objection, to cross-examine defendant's character witness, Shepard, by asking him if his favorable testimony as to defendant's reputation would be the same if he had heard that defendant had been arrested during investigation of certain criminal activities some six years previously.

■ The rule in this state is that a witness to defendant's good reputation may be cross-examined as to the facts of prior arrests or rumors of misconduct of the defendant, not to establish the truth of those facts or rumors, but to test the credibility of the witness and to ascertain what weight should be given to his testimony. *State v. Slade,* 338 S.W.2d 802, 807[11] (Mo.1960); *State v. Carroll,* 188 S.W.2d 22, 23–24[1–4] (Mo.1945); *State v. Carson,* 239 S.W.2d 532, 535–536[3–6] (Mo.App.1951). Such cross-examination tends to show either that the witness is in fact unfamiliar with defendant's reputation, or he is being untruthful, or his standard of what constitutes good reputation is unsound. It is true that the rule allowing an accused to introduce evidence of his good character is fraught with danger especially to those with tainted records. The danger is that a jury, upon hearing questions pertaining to prior arrests and rumors of misconduct will use them more directly to convict in the case on trial and reject or overlook their application to the reputation process. However, it would be an untenable situation to allow an accused to introduce evidence of his good character without according the State the opportunity to test its credibility. If such were the case, it would open the door to an accused to introduce such evidence by a friendly witness without fear that such testimony could be attacked. This rule provides a reasonable method of testing the credibility of a character witness as long as the State applies it in good faith. No claim of bad faith is made by the defendant and the record reveals none. Also, it should not be overlooked that it is the defendant and not the State who has the choice of opening or not opening the door to reputation.

The defendant contends that this rule is "bad law" and this court should overrule it. This we decline to do. The Supreme Court of Missouri has approved this rule of law as recently as 1972 in the case of *State v. Hastings,* 477 S.W.2d 108, 113[9, 10] (Mo.1972), and it is our constitutional duty to follow the last controlling decision of that court. Mo.Const. Art. V, § 2, as amended.

Defendant further complains that the arrest referred to by the State in its cross-examination of Shepard occurred six years prior to the present offense and was, therefore, irrelevant and immaterial to the issue of his character at the time of the trial. This contention is without merit. The trial court is afforded broad discretion in such a situation, *State v. Hastings,* supra, 477 S.W.2d at 113–114[11, 12], and under the facts before us we find no error in allowing the State to inquire into them.

Reversed and remanded.

All concur.